**Larketta RANDOLPH, et al., Plaintiffs,**

v.

**GREEN TREE FINANCIAL CORP., et al., Defendants.**

**No. 96–D–11–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 26, 1997.

Order Denying Reconsideration Jan. 5, 1998.

C. Knox McLaney, III, Angela L. Kimbrough, Montgomery, AL, Lynn W. Jinks, III, Union Springs, AL, for Plaintiffs.

Robert A. Huffaker, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

On January 25, 1994, Plaintiff Larketta Randolph purchased a mobile home from Better Cents Home Builders, Inc. in Opelika, Alabama. Randolph financed her purchase through Green Tree Financial Corp.—Alabama. Her financing documents required "vendors single interest" insurance, which protects the vendor or lienholder against the costs of repossession in the event of a default. (*See* Pl.'s Am.Compl., Ex. A.) The

installment contract also contains an arbitration provision requiring the resolution of disputes "arising from or relating to" the contract.[1] (*See* Pl.'s Am.Compl., Ex. B, ¶ 17.)

On January 3, 1996, Randolph filed the instant action. Her Complaint, as amended on December 10, 1996 and September 29, 1997, seeks recovery from Green Tree Financial Corp.—Alabama, Green Tree · Financial Corp., and Green Tree Financial Servicing corporation (collectively "Green Tree")[2] under two theories: (1) violation of the Truth In Lending Act ("TILA") for failure to disclose the "vendors single interest" requirement; and (2) violation of the Equal Credit Opportunity Act ("ECOA") for requiring waiver of statutory causes of action.[3] Ran-

---

1. The arbitration provision contained in Plaintiff's installment contract reads in pertinent part:

 17. ARBITRATION: All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration.... This arbitration Contract is made pursuant to a transaction in interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C.A. Section 1.... The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY ASSIGNEE (AS PROVIDED HEREIN).** The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract.

 (*See* Compl., Ex. B) (emphasis in original).

 Paragraph 16 of Plaintiff's contract also states:

 16. WAIVER OF JURY TRIAL. I hereby waive any right to a trial by jury that I have in any subsequent litigation between me and the seller, or me and any assignee of the Seller, where such litigation arises out of, is related to, or is in connection with any provisions of this Contract whether the Contract is asserted as the basis for a claim, counterclaim, or cross claim, or a defense to a claim, counterclaim, or cross claim.

 (*Id.*)

2. The retail installment contract executed by Randolph identifies Green Tree Corp. as the assignee. Green Tree—Alabama provides contract services for, and is a wholly owned subsidiary of, Green Tree Corp. Defendants contend that Green Tree Financial Servicing Corporation was not involved with Randolph's transaction, and that its activities in Alabama have not involved consumer finance transactions. Defendants submitted the Affidavit of Brian F. Corey in support of these contentions. Plaintiff has not presented any evidence in rebuttal, nor does the record disclose any evidence of Green Tree Financial Servicing Corporation's involvement in Randolph's transaction, or, consequently, the propriety of it remaining in this action. Accordingly, the court finds that Green Tree Financial Servicing corporation is due to be dismissed from the above-styled action. *See* Fed.R.Civ.P. 12(b)(6); Fed.R.Civ.P. 41(b).

3. Plaintiff has filed a total of three Complaints: her original on January 3, 1996, a "Second Amended Complaint" on December 10, 1996, and an "Amended Complaint" on September 29, 1997. Her Second Amended Complaint alleges that the "procurement of the arbitration contract is a fraudulent scheme effectuated by the superior bargaining power of defendant to prevent litigation, in that it is placed in an inconspicuous place on the contract, and is therefore void and unenforceable." (Pl.'s Second Am.Compl. ¶ 12.) Her Second Amended Complaint alleges that this "fraudulent scheme" amounts to fraud in the inducement of the arbitration contract. (*Id.* ¶¶ 29–33.) In her subsequent Amended Complaint, however, Plaintiff does not reallege any fraudulent scheme on the part of Green Tree, nor do her subsequent pleadings on dispositive motions address this contention. The sole issue before the court, however, is the enforceability of the arbitration provision in Plaintiff's contract, not the merits of Plaintiff's Complaint.

dolph also brings this action on behalf of a similarly situated class. (Am.Compl.¶¶ 12–19.)

In lieu of an Answer, Green Tree filed a Motion To Stay Action and Compel Arbitration, as well as several subsequent briefs and memorandums in support thereof. Pursuant to a request from the court, Green Tree filed one consolidated pleading on October 31, 1997 styled "Motion Of [Green Tree] to Compel Arbitration, Motion To Stay, Or, In The Alternative, Motion To Dismiss And Brief In Support Thereof." ("Defs.' Consolidated Mot.") These Motions are the subject of this Memorandum Opinion and Order. After careful consideration of the arguments of counsel, relevant law, and the record as a whole, the court finds that the collective Green Tree Motion To Compel Arbitration is due to be granted. Rather than stay this action, however, the court finds that dismissal with prejudice is appropriate. Accordingly, the court finds that the collective Green Tree Motion To Stay Action is due to be denied, but that the Motion To Dismiss is due to be granted. Finally, the court finds that Green Tree Financial Servicing Corp. is due to be dismissed as a party to this action.

## JURISDICTION

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question) and 15 U.S.C.A. § 1640. The parties do not contest personal jurisdiction or venue.

## DISCUSSION

■ Section 2 of the Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[4] 9 U.S.C.A. § 2. The effect of § 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration. 9 U.S.C.A. § 3. Section 4 provides for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C.A. § 4.

■ Whether an arbitration provision is enforceable, as opposed to the merits of the underlying dispute, is a question for the court. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 985 F.2d 1067 (11th Cir.1993). Any doubts about the scope of arbitrable issues should be resolved in favor of arbitration, even if the result is piecemeal litigation. *See Byrd,* 470 U.S. at 218–21; *Moses H. Cone,* 460 U.S. at 24; *Kelly,* 985 F.2d at 1069.

■ In enacting the FAA, Congress manifested a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 25, 111 S.Ct. 1647, 114 L.Ed.2d 26 (quoting *Moses H. Cone,* 460 U.S. at 24). The Act's purpose "was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Id.* at 24. Therefore, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone,* 460 U.S. at 24, and courts must "rigorously enforce agreements to arbitrate." *Byrd,* 470 U.S. at 221.

■ Even with this strong federal policy in mind, however, arbitration is a matter of contract, and a party cannot be compelled to arbitrate any claims which he or she has not agreed to submit to arbitration. *AT & T Technologies, Inc. v. Communications Work-*

---

4. The parties do not contest the question of whether Plaintiffs' contract in this action satisfies the nexus to interstate commerce requirement of the FAA. (*See* Pl.'s Opp. at 6, n. 2; Defs.' Consolidated Mot. at 2–3.) Accordingly, the court finds that for the purposes of this Memorandum Opinion and Order, Plaintiff's contract satisfies this jurisdictional prerequisite of the FAA. *See generally, Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *Staples v. Money Tree, Inc.,* 936 F.Supp. 856 (M.D.Ala.1996).

*ers of Am.,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Accordingly, "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 627, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Section 2 of the FAA allows courts to give relief where the party opposing arbitration presents "well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.' " *Rodriguez De Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 483–84, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (quoting *Mitsubishi Motors,* 473 U.S. at 627; 9 U.S.C.A. § 2).

■ Plaintiff bears the burden of demonstrating why the arbitration agreement in this action should not bind the parties, *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), and raises several grounds as to why the court should not compel arbitration. Alternatively, Plaintiff requests that the court certify a class before ordering arbitration.

## I. Enforcement Of The Arbitration Provision Is Not Statutorily Barred

### A. Background

Plaintiff contends that Green Tree's actions both in requiring "vendors single interest" insurance and in requiring arbitration of her claims violates her rights under the TILA and the ECOA. Plaintiff's first argument is that requiring "vendors single interest" insurance "imposes an extra charge for insurance each year in the approximate amount of $15.00 and constitutes a clear violation of the [TILA]," because this charge was not disclosed.[5] (Pl's Opp. at 1.) The TILA requires the disclosure of certain cred-

it charges articulated in the Act. *See* 15 U.S.C.A. § 1601, *et seq.*

Additionally, Plaintiff contends that under 15 U.S.C.A. § 1691(a)(3), a provision of the ECOA, "a consumer who wishes to reserve the right to judicial redress for such violations cannot be denied credit." (Pl.'s Opp. at 11.) Plaintiff further cites regulation B implementing the ECOA, which she contends "prohibits presenting terms which violate the Act to a consumer in such a manner as to convey the impression to a reasonable consumer that they are mandatory." (Pl.'s Reply at 3 (citing 12 C.F.R. § 202.4(1), Commentary).) Plaintiff argues that "in order to finance with Green Tree, it is necessary to submit all disputes … to arbitration." (Pl.'s Reply at 1.) Accordingly, "[b]y requiring consumers to sign a contract waiving statutory causes of action, Green Tree violates [the ECOA] which prohibits a creditor from requiring a waiver of rights." (Am. Compl. ¶ 27.) Essentially, Plaintiff contends that "[a] creditor may not condition the extension of consumer credit upon the consumer's waiving his right to judicial redress for violations of [TILA]." (Pl.'s Opp. at 10; *see also* Pl.'s Reply at 1.) In other words, "a creditor cannot insist that the consumer sign a predispute arbitration clause covering claims under [TILA]." (Pl.'s Opp. at 12.).

Hence, Plaintiff contends that because Green Tree fails to disclose the "vendors single interest" requirement in its TILA disclosures, she is entitled to damages, including attorney's fees and litigation expenses pursuant to 15 U.S.C.A. § 1640. (Am.Compl. at 6.) She requests similar damages for the alleged ECOA violations. (Am.Compl at 7.)

Green Tree argues that "[e]nforcement of arbitration in the context of TILA claims does not run afoul of any of the provisions of the [ECOA]. Plaintiff has available to her the full panoply of rights granted by the

---

5. Plaintiff contends that: (1) "Green Tree is a creditor within the meaning of TILA;" (2) "The notes and security instruments signed by plaintiff and borrowers for the purchase of mobile homes were extensions of credit subject to TILA;" (3) "The requirement that insurance policies contain provisions covering Green Tree's possible repossession expenses are credit charges as defined by TILA and occur annually when each policy is

renewed;" and (4) "No TILA disclosures are given by Green Tree." (*See* Am.Compl. ¶¶ 21–23.) Green Tree does not rebut these contentions and instead only addresses the merits of the arbitration issue. In this Memorandum Opinion and Order, however, the court only addresses the question of whether Plaintiff may be compelled to arbitrate her claims, not the merits of the underlying claims themselves.

ECOA, and the only limitation imposed is that her remedies be pursued in arbitration rather than in the judicial arena." (Defs.' Consolidated Mot. at 3.)

### B. Analysis

█ In determining whether Congress intended to preclude waiver of judicial remedies, the Supreme Court has prescribed a two-step inquiry. First, the court must determine whether the Parties' agreement to arbitrate reaches the statutory issues, and then, upon finding it does, the court must consider whether legal constraints external to the Parties' agreement foreclosed the arbitration of those claims. *Mitsubishi Motors,* 473 U.S. at 629; *see also McMahon,* 482 U.S. at 226–27.

█ As for the first prong of the *Mitsubishi Motors* test, and resolving all doubts in favor of arbitration, *Byrd,* 470 U.S. at 218–21; *Moses H. Cone,* 460 U.S. at 24; *Kelly,* 985 F.2d at 1069, the court finds that the arbitration provision at issue here reaches the statutory issues. The arbitration provision provides for binding arbitration of "[a]ll disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clauses or the entire contract." (*See supra,* n. 1.) The provision also provides that "[t]he parties agree and understand that all disputes arising under case law, statutory law, and all other laws, including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Contract." *Id.* The court finds the terms of the provision to be sufficiently broad to encompass Plaintiff's TILA, ECOA, and other claims in this suit, notwithstanding Plaintiffs' protestations that the provision does not specifically reference applicable statutes. (Pl.'s Reply at 4); *see, e.g. Green Tree v. Lipham,* CV–96–D–208–N (M.D.Ala.1997) (De Ment, J.) (broadly construing same provision at issue here); *Ex parte Isbell,* 1997 WL 531100

(Ala., August 29, 1997) (same); *Ex parte Gates,* 675 So.2d 371 (Ala.1996) (same); *see also McCarthy v. Providential Corp.,* 1994 WL 387852 (N.D.Cal. July 19, 1994) (enforcing arbitration provision applicable to "any controversy or claim arising out of or relating to" loan documents even though it did not specifically reference any federal statute); *Lopez v. Plaza Finance Co.,* 1996 WL 210073 (N.D.Ill. April 25, 1996) (similar).

█ As for the second prong of the *Mitsubishi Motors* analysis, in *McMahon,* the Supreme Court stated that "[t]he Arbitration Act, standing alone, ... mandates enforcement of agreements to arbitrate statutory claims." 482 U.S. at 226. Indeed, as the *Mitsubishi Motors* court noted:

> By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration. We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deductible from text or legislative history.[6]

*Mitsubishi Motors,* 473 U.S. at 628. The Supreme Court found "no warrant in the Arbitration Act for implying in every contract within its ken a presumption against arbitration of statutory claims." *Id.* at 625.

Even though there is no presumption against the arbitrability of statutory claims, and courts are to "rigorously enforce agreements to arbitrate," *Byrd,* 470 U.S. at 221, the party opposing arbitration may show that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue," and avoid arbitration. *McMahon,* 482 U.S. at 227. "If Congress did intend to limit or prohibit waiver of a judicial forum for a

---

**6.** *See also Gilmer,* 500 U.S. at 23 (holding that claims arising under the Age Discrimination In Employment Act may be subject to arbitration); *Rodriguez de Quijas,* 490 U.S. at 480–83 (holding that claims arising under § 12(a)(2) of the Securities Act of 1933, 15 U.S.C.A. § 77l(a)(2), may be subject to arbitration); *McMahon,* 482 U.S. at 238–42 (holding that claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961–1968, may be subject to arbitration); *Mitsubishi Motors,* 473 U.S. at 629 (holding that claims arising under the Sherman Act, 15 U.S.C.A. §§ 1–7, may be subject to arbitration).

particular claim, such an intent 'will be deductible from [the statute's] text or legislative history,' . . . or from an inherent conflict between arbitration and the statute's underlying purpose." *Id.* (citing *Mitsubishi Motors,* 473 U.S. at 632–37; *Byrd,* 470 U.S. at 217). Accordingly, Plaintiff must show that Congress intended to preclude a waiver of judicial remedies from either the text of the statute(s), their legislative histories, or from an inherent conflict between arbitration and the statutes' underlying purposes. *Id.* at 227; *see also Gilmer,* 500 U.S. at 26–27. Green Tree argues, and the court agrees, that Plaintiff does not meet her burden.

First, Plaintiff does not cite any provision of the text or legislative history of either the TILA or the ECOA that expressly precludes waiver of judicial remedies. In other words, Plaintiff has not shown that Congress intended for all disputes arising thereunder to be resolved solely by the courts. Instead, Plaintiffs' principal argument is based on her perceived conflict between arbitration and the statutes' underlying purpose: "[u]nder TILA, a consumer has a statutory right to judicial redress, including the right to bring a class action." (Pl.'s Opp. at 11 (citing 15 U.S.C.A. § 1640).) The possibility of class-action exposure, argues Plaintiff, " 'is essential to the prophylactic intent of the Act, and is necessary to elevate truth-in-lending lawsuits from the ineffective nuisance category to the type of suit which has enough sting to insure that management will strive with diligence to achieve compliance.' " (Pl.'s Opp. at 12 (citing *Bantolina v. Aloha Motors,* 419 F.Supp. 1116, 1120 (D.Haw.1976);) *see also* Pl.'s Reply at 1–2.) Plaintiff argues that "[f]ew, if any, borrowers will submit claims to arbitration in this amount [$15–20 per year]. The purpose of the Truth in Lending Act will thus be completely thwarted by allowing an arbitration clause to stand." (Pl.'s Reply at 2–3.)

Further, Plaintiff argues that under 15 U.S.C.A. § 1691, "a consumer who wishes to reserve the right to judicial redress for such violations cannot be denied credit." (Pl.'s Opp. at 11.) Section 1691 provides in pertinent part:

 (a) It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—

 (3) because the applicant has in good faith exercised any right under this chapter.

15 U.S.C.A. § 1691(a)(3). Plaintiff contends that this provision prevents a creditor from requiring a consumer to waive their "statutory right" to judicial redress under the TILA. (Pl.'s Opp. at 11–12.) Because of this "statutory right," Plaintiff contends that "a creditor cannot discriminate with respect to the extension of credit if the consumer insists on preserving the right to seek judicial redress." In essence, Plaintiff's argument is that "a creditor cannot insist that the consumer sign a predispute arbitration clause covering claims under [TILA]." (Pl.'s Opp. at 12.)

As an initial matter, the court notes that contrary to Plaintiffs' assertion, a creditor insisting that a consumer sign a predispute arbitration clause is not similar to a creditor discriminating with respect to the extension of credit if the consumer insists on preserving the right to seek judicial redress. (*See Id.* at 12.) Indeed, Plaintiff apparently recognizes as much when she argues that Green Tree admits that: "[I]f Plaintiff had asked to obtain credit without an arbitration clause so she could pursue rights under TILA and been denied, plaintiff would have an ECOA claim."[7] (Pl.'s Reply at 3.) It is important to note that Plaintiff's statutory argument is not that she was denied credit because she refused to sign an arbitration clause. Rather, Plaintiff concedes that she signed the contract with the arbitration provision. Her contention is merely that arbitration should not be required under the TILA and the ECOA.[8]

---

7. Green Tree contends that contrary to Plaintiff's assertion, it does not "admit" to anything. (Defs.' Consolidated Mot. at 27, n. 9.) Regardless of this dispute, the court merely utilizes Plaintiff's statement to show that Plaintiff recognizes the distinction between a creditor bargaining for an arbitration provision in its contract,

and a creditor refusing to extend credit to a consumer because the consumer refuses to accede to an arbitration provision.

8. Plaintiff also proffers various contractual grounds for not enforcing the arbitration provision which the court addresses *infra.*

A creditor can bargain for any provision in a contract, including an arbitration provision, as long as it is legal or does not violate public policy. A consumer who voluntarily enters into a contract with a creditor is bound by the terms and conditions of that contract, assuming no applicable legal or equitable conditions work to render the contract void or voidable. The situation where a consumer enters into a contract containing an arbitration provision, and thus precludes judicial remedies, is much different from the consumer being denied credit because he or she refuses to sign a contract with an arbitration provision. In this action, Green Tree is merely attempting to enforce a predispute arbitration provision. Contrary to Plaintiff's suggestions in her pleadings, she does not argue that she was forced to sign an arbitration provision against her will, or that she was denied credit because she refused to sign a contract with an arbitration provision. She merely contends that requiring arbitration, even though she signed a contract agreeing to arbitrate, would violate the underlying purpose of TILA in two ways: (1) by precluding class action litigation as provided for in the statute; and (2) by thwarting the underlying consumer protection purposes of the Act.

Plaintiff relies on the provisions of 15 U.S.C.A. § 1640 for the proposition that because Congress provided for class actions under the TILA, Green Tree cannot condition credit on preclusion of class actions or other judicial remedies. Plaintiff also contends that 15 U.S.C.A. § 1691(a)(3) prohibits the conditioning of the extension of credit on a consumer's waiver of rights provided under the TILA and other consumer protection statutes. However, § 1640 does not create a "statutory right" to pursue class action litigation or other judicial redress, as Plaintiff contends. Section 1640 merely provides for jurisdictional requirements and liability limitations. *See* 15 U.S.C.A. § 1640; *see also Lopez*, 1996 WL 210073 at *3; *Truckenbrodt v. First Alliance Mortgage Co.*, 1996 WL 422150 (N.D.Ill.1996). Providing for class action litigation does not necessarily preclude any other type of dispute resolution or provide Plaintiff with a substantive "right." As the *Gilmer* court noted: "the fact that the [statute] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." 500 U.S. at 32.

The underlying purposes of a statute may, however, preclude waiver of class claims, regardless of contractual provisions entered into between the parties. *See Mitsubishi Motors*, 473 U.S. at 632–37; *Byrd*, 470 U.S. at 217. But, a statute containing provisions governing class action litigation, without more, does not provide a plaintiff with the substantive right to bring her claims as the representative of a similarly situated class. The Supreme Court addressed this argument in *Gilmer*, where, in the context of the Age Discrimination In Employment Act, it stated that submitting a claim to arbitration does not operate to waive the consumer's rights: "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Gilmer*, 500 U.S. at 26; *see also Rodriguez de Quijas*, 490 U.S. at 480; *McMahon*, 482 U.S. at 229–30. Congress did not explicitly preclude arbitration or other nonjudicial resolution of TILA and/or ECOA claims, and Plaintiff has not shown such intention discernible from the text or legislative history.

Additionally, permitting binding arbitration of these statutory claims is consistent with statutory provisions, such as 15 U.S.C.A. § 1640(e), that grant concurrent state and federal jurisdiction for hearing such claims. Where Congress provides for alternate fora, it does not necessarily follow that Congress intended to preclude fora not specifically provided for in the statute. Nor does it follow that Congress intended to limit fora to only those specifically enunciated. Unless otherwise indicated, Congress is merely providing procedural avenues of redress that do not necessarily preclude other avenues; Congress is not providing a substantive right to pursue a class action. As the *Gilmer* court noted: "arbitration agreements, 'like the provision for concurrent jurisdiction, serve to advance the objective of allowing [claimants] a broader right to select the forum for resolving disputes, whether it be judicial or otherwise.'" 500 U.S. at 29

(quoting *Rodriguez de Quijas*, 490 U.S. at 483). Class actions are procedural devices, while "arbitration is contractual and therefore substantive." *Sanders v. Robinson Humphrey/American Exp. Inc.*, 634 F.Supp. 1048, 1065 (N.D.Ga.1986), *aff'd in part, Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n. 5 (11th Cir.1987) (noting the Supreme Court's holding in *McMahon* precluding class treatment of plaintiffs subject to an arbitration agreement). Procedural devices may not supersede substantive rights. *Id.*

The court finds unpersuasive Plaintiff's reliance on case law holding that § 1691(a)(3) bars a creditor from conditioning an extension of credit on the *release* of potential claims for TILA violations arising in the past. (Pl.'s Opp. at 12–14.) In this regard, Plaintiff relies heavily on *Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178 (11th Cir. 1982). In that case, the sole issue before the Eleventh Circuit was "whether a general release discharging [a creditor] from any claims arising out of the purchase of an automobile constitutes a valid waiver of (Plaintiff's) claims under TILA." *Id.* at 1179. More specifically, the court was solely addressing the question of "whether a person may waive a TILA claim." *Id.* at 1180 (emphasis added). The court held that *under the facts of that case*, the particular release executed by the Plaintiff did not bar a claim under TILA. *Id.* at 1182. Although it discussed the statutory purpose behind TILA, the court specifically held only that the plaintiff's release "[did] not bar her TILA claim because we are convinced that *she was unaware that the release encompassed her TILA* rights." *Id.* (emphasis added). The court did not explicitly base its holding on the underlying purpose of the TILA, but rather on the plaintiff's level of knowledge.

■■■ As Green Tree notes, "there is a vast distinction between an instrument which completely absolves a creditor from liability for a previously committed TILA violation (a release) and an instrument which preserves the debtor's rights to pursue future claims against the creditor but prescribes that these claims be resolved by arbitration (an arbitration clause)." (Defs.' Consolidated Mot. at 14.) Preclusion of a claim through a release is fundamentally different from an arbitration provision specifying the particular forum for resolution of a claim. The former prevents a claim from being brought at all; the latter merely provides the forum for its resolution—it does not preclude the consumer from bringing a claim. *See Gilmer*, 500 U.S. at 26; *see also Rodriguez de Quijas*, 490 U.S. at 480; *McMahon*, 482 U.S. at 229–30.

In that context—the preclusion of bringing a TILA claim—the *Parker* court noted that:

The public benefits from ·enforcement of TILA because it creates a system of disclosure that ·improves the bargaining posture of all borrowers. To ensure the realization of this goal, Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages.... This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant.

Not only does TILA contemplate a public interest in the enforcement of individual rights, but the public must rely largely on the efforts of individual consumers acting as "private attorneys general" to achieve the disclosure system envisioned by the Act.... If these private attorneys general are permitted to waive TILA claims in circumstances such as those presented in this case, the public interest in deterring inconsistent and undecipherable lending practices would be greatly hampered. The significance of this possibility becomes clearer when we consider that the confusion, and perhaps ignorance, that has led consumers in the past to accept draconian credit terms leaves them equally vulnerable when the lender gives them a general release of prospective claims to sign. The Truth In Lending Act was necessary exactly because borrowers could not force creditors to provide voluntarily a system of credit within which consumers could function intelligently.

*Parker*, 673 F.2d at 1181 (citations omitted). Significantly, the *Parker* court spoke only of the conflict between a release and the under-

lying purposes of the TILA. Noticeably absent from the above quoted passage is any discussion of conflict, actual or apparent, between *arbitration* and the TILA's underlying purpose. As noted, a release precludes claims; in contrast, an arbitration provision merely prescribes the forum for hearing those claims. *See also Kelly v. UHC Management, Co., Inc.*, 967 F.Supp. 1240, 1258 (N.D.Ala.1997) (noting distinction between a complete release of liability and an arbitration provision's mere choice of forum).

Plaintiff also relies on *Parker* for the proposition that "TILA is imbued with a public purpose with individuals and their attorneys serving as private attorneys-general. The specific grant of the right to bring class action litigation is part of enforcing that public purpose.... [T]he removal of class action relief through arbitration would in essence eliminate compliance with TILA." (Pl.'s Reply at 4.) A close reading of *Parker*, however, shows that the Eleventh Circuit noted that to "ensure realization" of the enforcement of TILA's system of disclosure (compliance), "Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages. 15 U.S.C. § 1640(a). This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant." *Parker*, 673 F.2d at 1181.

Thus, although the language of *Parker* could be construed to support the assertion that class action litigation acts to ensure compliance *in addition* to the provisions for minimum recovery without having to prove actual damages, the Eleventh Circuit has not expressly so held. An equally logical reading of the class action provisions of the TILA, absent *Parker*, could be that because they provide for *limits* on recovery in class actions, Congress was actually concerned with consumers inundating creditors with class ac-

tions and securing large recoveries, and thus § 1640 was enacted to actually protect creditors as opposed to ensuring compliance with the Act as Plaintiff contends.

The court emphasizes that it is not indicating that this was the actual intent of Congress. *Parker*, however, is essentially inapplicable to the facts of this action. The Eleventh Circuit addressed a preclusion of claims through a release rather than an arbitration provision's prescription of a forum for hearing those claims. Further, the Eleventh Circuit limited its holding in *Parker* to the facts of the case before it. *Parker*, 673 F.2d at 1182. Consequently, *Parker* falls out of the analysis, and the court is left with Plaintiff's bare assertion, without supporting authority, of what she perceives to be the Congressional intent behind § 1640. While it is true that compliance with TILA, and realization of its deterrent effect, is even more likely if creditors are subject to class actions in addition to Plaintiffs not being required to show actual damages, Plaintiff fails to cite any compelling evidence in support of her position. Absent such evidence, the court finds that Plaintiff has failed to meet her burden of showing why the arbitration provision in her contract should not be enforced.[9]

## II. Plaintiff's Contractual Arguments Fail

As noted *supra*, "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *see also, Volt Info. Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citing *Byrd*, 470 U.S. at 219); *AT & T Tech.*, 475 U.S. at 648. Plaintiff contends that there is no consideration for the arbitration clause in her financing documents because the arbitration clause requires the consumer to arbitrate all suits, but gives Green Tree the option of using judicial or non-judicial relief to enforce a security agreement. (Pl.'s Re-

---

**9.** Plaintiff also cites *Prudential Ins. Co. v. Lai*, 42 F.3d 1299 (9th Cir.1994) in support of her position. The court deems it sufficient to note that: (1) the factual situation in *Lai* was far removed from the facts of this case, and are not analo-

gous; (2) *Lai* is not binding precedent in this Circuit; and (3) a multitude of courts have either limited *Lai's* holding or restricted its application. (*See* Defs.' Consolidated Mot. at 16, n. 4, and accompanying text.)

ply at 5; Pl.'s Opp. at 15 .) In other words, the arbitration provision "requires the consumer to arbitrate everything but does not require Green Tree to arbitrate anything." (Pl.'s Opp. at 15–16.) Plaintiff also contends that she did not knowingly agree to arbitrate her statutory claims. (Pl.'s Opp. at 20.) Plaintiff argues that "a litigant can only be required to arbitrate a federal statutory claim 'if she has knowingly agreed to submit such disputes to arbitration.'" (*Id.* (quoting *Lai,* 42 F.3d at 1305).) In response, Green Tree admits that a contract generally requires consideration, but argues that the provision at issue in this action was amply supported by consideration. Green Tree also contends that Plaintiff did, in fact, knowingly agree to arbitrate her claims.

 Because Plaintiff's contractual arguments are directed exclusively to the arbitration provisions, and not to her contract as a whole, the court may properly address these issues. *See Prima Paint Corp. v. Flood Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Wheat, First Securities, Inc. v. Green,* 993 F.2d 814 (11th Cir.1993); *Boyd v. Homes of Legend, Inc.,* 981 F.Supp. 1423, 1441–42 (M.D.Ala.1997). In doing so, the court applies state law governing the formation of contracts, keeping in mind the strong federal policy favoring arbitration. *See First Options of Chicago v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Volt Info.,* 489 U.S. at 468; *American Express Fin. Advisors v. Makarewicz,* 122 F.3d 936, 940 (11th Cir.1997); *Roberson v. Money Tree of Ala.,* 954 F.Supp. 1519, 1528 (M.D.Ala. 1997).

### A. The Arbitration Provision Is supported By Consideration

 Plaintiff contends that the arbitration provision requires the consumer to arbitrate everything, but does not require Green Tree to arbitrate anything. (Pl.'s Opp. at 15–16.) Pursuant to *Hull v. Norcom, Inc.,* 750 F.2d 1547 (11th Cir.1985), Plaintiff argues such "one-way" arbitration clauses are not enforceable. (*Id.*) Plaintiff's consideration argument, essentially, is that the arbitration provision is unenforceable for lack of mutuality of obligation. *See WMX Technologies, Inc. v. Jackson,* 932 F.Supp. 1372, 1374

(M.D.Ala.1996) ("mutuality of obligation is properly viewed as an elaboration of the concept of consideration").

In *Hull,* the Eleventh Circuit, utilizing New York law, addressed an arbitration agreement that required one party to arbitrate but left the other party free to choose between arbitration and judicial enforcement. 750 F.2d at 1549–50. The Eleventh Circuit held that under New York contract law, "the consideration exchanged for one party's promise to arbitrate must be the other party's promise to arbitrate at least some specified class of claims. Mere presence of an arbitration clause is insufficient to enforce the arbitration provision." *Id.* at 1550. New York law required mutuality; an arbitration provision was unenforceable unless both parties to the contract exchanged reciprocal promises to arbitrate.

*Hull's* mutuality requirement, based on New York law, has not been widely accepted. Indeed, New York itself has subsequently overruled its mutuality requirement. *See Sablosky v. Edward S. Gordon Co.,* 73 N.Y.2d 133, 538 N.Y.S.2d 513, 535 N.E.2d 643, 646 (1989) ("mutuality of remedy is not required in arbitration contracts. If there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement"); *see also Latifi v. Sousa,* 1996 WL 735260 at *5 (recognizing same and quoting *Design Benefit Plans, Inc. v. Enright,* 940 F.Supp. 200, 204 (N.D.Ill. 1996) ("as far as New York law is concerned, *Hull* is no longer good law")). *Latifi* also notes *Hull's* lackluster reception in a multitude of jurisdictions, including distinguishment on the grounds that *Hull's* mutuality requirement was unique to New York state, or outright rejection of its holding. *See Latifi,* 1996 WL 735260 at *4; *see also Kelly,* 967 F.Supp. at 1259 (declining to follow *Hull* because New York law was inapplicable); *W.L. Jorden & Co. v. Blythe Ind., Inc.,* 702 F.Supp. 282, 284 (N.D.Ga.1988) (same). Because the *Hull* court was following New York law, and Alabama law is applicable in the instant action, Plaintiff's reliance on *Hull* is misplaced.

Contrary to Plaintiff's assertions, Alabama law is not similar to pre-*Sablosky* New York law, the law interpreted in *Hull;* in Alabama, mutuality in arbitration provisions is not required. Under Alabama law, mutuality:

[D]oes not mean equal rights under the contract, or that each party is entitled to the same rights or covenants under the contract. So long as there is a valuable consideration moving from one side to the other, or there are binding promises on the part of each party to the other, there is adequate consideration for a valid contract.

*Marcrum v. Embry,* 291 Ala. 400, 282 So.2d 49 (1973). "If there is consideration, there need not be" mutuality of obligation. *Sherrill v. Alabama Appliance Co.,* 240 Ala. 46, 197 So. 1 (1940). Further, in a recent decision, the Alabama Supreme Court acknowledged that no severable or identical consideration is required for an arbitration provision to be enforceable. *Northcom, Ltd. v. James,* 694 So.2d 1329, 1335–36 (Ala.1997). The court merely required ample consideration between the parties in the contract the arbitration provision governs. *Id.; see also Goodwin v. Ford Motor Credit Co.,* 970 F.Supp. 1007, 1011 (M.D.Ala.1997).

Alabama contract law does not require mutuality—"equal or reciprocal consideration is not required.... So, under Alabama law, even a unilateral arbitration agreement is enforceable, so long as the contract in which it is contained contains some consideration given by each side." *Latifi,* 1996 WL 735260 at \*5 (citing *in accord WMX Technologies,* 932 F.Supp. at 1375). Having noted that Plaintiff's contentions are unsupported by *Hull* or by Alabama law, the court finds that the contract between the parties at issue here—and consequently the arbitration provision contained therein—is supported by ample consideration. There are mutually enforceable promises in the contract. Plaintiff's argument accordingly fails.

## B. Plaintiff Knowingly Consented To Arbitration

Plaintiff contends that "a litigant can only be required to arbitrate a federal statutory claim if 'she *knowingly* agreed to submit such disputes to arbitration.'" (Pl.'s Opp. at 20 (citing *Lai,* 42 F.3d at 1305) (emphasis added).) She argues that *Parker* supports her contentions because the Eleventh Circuit "held that a release was ineffective to bar plaintiff's TILA claim 'because we are convinced that she was unaware that the release encompassed her TILA rights.'" (*Id.* at 20–22 (citing *Parker,* 673 F.2d at 1182) (emphasis added).) Essentially, Plaintiff is arguing that she has to have "knowledge" of any "right" that she is waiving.

Green Tree contends that "if Plaintiff did not know of the existence of the arbitration provision, it was because she did not take the time to read the installment contract." (Defs.' Consolidated Mot. at 47.) Green Tree points to portions of Plaintiff's deposition which it contends establishes that "any lack of knowledge on her part was not because she could not have read and understood the arbitration clause when she entered into it but, instead, was because of her lack of diligence in taking the time to read the contract which she signed." (*Id.* at 48.)

In arguing that *Parker* precludes enforcement of the arbitration provision, Plaintiff is arguing that enforcement is only appropriate if she "knowingly" agreed to arbitration. In other words, Plaintiff contends that the arbitration provision requires her to waive what she contends to be a substantive right (the right to proceed with a class action), and *Parker* requires the waiver of a substantive right to be made with knowledge. In *Parker,* the Eleventh Circuit held that the plaintiff's *release* did not bar her TILA claims because "she was *unaware* that the release encompassed her TILA rights." *Parker,* 673 F.2d at 1182 (emphasis added).

As noted, *supra,* a release operates as a waiver of substantive rights—the right to pursue claims. In contrast, an arbitration provision does not operate to waive substantive rights (claims), it merely prescribes the forum for enforcing those rights and resolving those claims. Accordingly, *Parker's* holding that on the facts of that case the release did not bar plaintiff's TILA claims because the plaintiff was unaware that the release operated to waive such claims, is inapplicable to the facts of this action. Plaintiff's argument that because *Parker* requires a knowing waiver of rights in a release, the

same standard of knowledge should be applied to an arbitration provision is simply incongruous. Again, the court notes the Supreme Court's language in *Gilmer:* "[A] party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 500 U.S. at 26 (citing *Mitsubishi Motors,* 473 U.S. at 628). Plaintiff's agreement to arbitrate does not involve a waiver of a substantive right, and the heightened knowledge standard articulated in *Parker* is not applicable to the case at bar. *See also Puentes v. United Parcel Serv., Inc.,* 86 F.3d 196, 198 (11th Cir.1996) (applying knowing and voluntary standard to employee's release of employer from Title VII and 42 U.S .C. § 1981 liability); *Kelly,* 967 F.Supp. at 1257–58.

In her deposition, Plaintiff states that when she received the contract containing the arbitration provision, she "went over the front and glanced over the back." (Randolph Dep. at 51, *See* Green Tree Evidentiary Submission In Supp., Ex. 3.) At that time, she did not see anything that caused her any concern. (*Id.*) Plaintiff admits that she could have taken the time to look at the back of the contract if she had wanted to. (*Id.* at 79.) Plaintiff also admits that Green Tree representatives did not say anything to her on a visit to her home that she now contends was false or untrue. (Pl.'s Dep. at 73.) Nor is there any contention elsewhere in Plaintiff's deposition or pleadings that Green Tree intentionally misled her, made statements that she now contends are false or untrue, or coerced her in anyway into signing her contract.

Plaintiff's deposition testimony establishes that she read the front of her contract, and "glanced" at the back. Green Tree did not pressure Plaintiff or force her to sign the contract without reading it—she admits she could have taken more time if she had wanted to. Nothing concerned her at that time. There is no evidence that Green Tree made any false statements to Plaintiff, or misled her in any way. The evidence merely shows that Plaintiff did not read the back page of her contract—where the arbitration provision was located.

Plaintiff cannot complain now about an agreement to arbitrate she admittedly did not read at the time she signed the contract. *Kelly,* 967 F.Supp. at 1257. Plaintiff's failure to read what she signed does not insulate her from her contractual obligations, including the agreement to arbitrate. *Coleman v. Prudential Bache Sec. Inc.,* 802 F.2d 1350, 1352 (11th Cir.1986) (per curiam) ("absent a showing of fraud or mental incompetence, a person who signs a contract cannot avoid her obligations under it by showing that she did not read what she signed"); *Ex parte Stripling,* 694 So.2d 1281, 1283–84 (Ala.1997) (holding that even though plaintiffs did not read the contracts before signing, "ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby").

This action does not involve a release of liability, as did *Parker.* Instead, it involves an agreement to arbitrate claims arising out of or related to Plaintiff's contract rather than pursuing those claims in a court of law. Plaintiff had an unfettered opportunity to read her contract. Yet, by Plaintiff's own admission, she merely "glanced over" the back—the page with the arbitration provision. Plaintiff cannot argue that she did not knowingly enter into the arbitration provision based on her admitted failure to read those provisions dealing with arbitration. Under these facts, the court finds that Plaintiff voluntarily and knowingly entered into her contract, including the arbitration provisions contained therein, notwithstanding Plaintiff's contentions that *Parker* 's heightened knowledge requirement applies. The court finds that a release is sufficiently dissimilar in terms of legal effect so as to distinguish the facts and holding of *Parker* from the facts of this case. Accordingly, Plaintiff's argument that she did not knowingly enter into an agreement to arbitrate must fail.

### III. The Court Declines To Certify A Class

 It is true that compelling arbitration in this instance will eliminate Plaintiff's ability to arbitrate her claims on behalf of a class. Nevertheless, Congress has not created a statutory right—as opposed to a proce-

dural mechanism—to bring class actions under the TILA. Further, the Supreme Court has repeatedly emphasized that courts are to rigorously enforce the parties' agreement as they wrote it; the FAA *"requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone,* 460 U.S. at 21 (emphasis in original); *see also Byrd,* 470 U.S. at 221.

In addition, Plaintiff mistakenly asserts that "the Court's authority to certify a class to proceed in arbitration is questionable." (Pl.'s Opp. at 22.) It is not. In *Protective Life Ins. v. Lincoln Nat. Life Ins.,* 873 F.2d 281 (11th Cir.1989) (per curiam), the Eleventh Circuit addressed the issue of "whether a district court may consolidate arbitration proceedings if the parties have not provided for consolidation in their arbitration agreements." *Id.* at 282. The Eleventh Circuit concluded "that [a district court] may not." *Id.* The court noted that § 4 of the FAA "limits the power of the court to determining whether a written arbitration agreement exists, and if it does, to enforcing it 'in accordance with its terms.'" *Id.* (citing 9 U.S.C. § 4). The court quoted the Ninth Circuit's observation in *Weyerhaeuser Co. v. Western Seas Shipping Co.,* 743 F.2d 635, 637 (9th Cir.1984), *cert. denied,* 469 U.S. 1061, 105 S.Ct. 544, 83 L.Ed.2d 431 (1984), that:

> this interpretation of section 4 "comports with the statute's underlying premise that arbitration is a creature of contract, and that '[a]n agreement to arbitrate before a special tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.'" *Id.* (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)). Parties may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements, but if such provisions are absent, federal courts may not read them in.

*Protective Life,* 873 F.2d at 282.

The court went on to hold that the agreements between the parties in *Protective Life* "contain their own arbitration clauses, and each clause requires arbitration only between the parties to that agreement. The [parties] never agreed to consolidated arbitration."

*Id.; see also Kirkpatrick,* 827 F.2d at 725, n. 5. Therefore, because the contracts did not provide for arbitration on a class basis, the Eleventh Circuit declined to read such a provision into them, and instead, merely enforced the terms of the contract requiring individualized arbitration. The Second, Fifth, Sixth, Seventh, Eight, and Ninth Circuits have also held that absent either an express provision in an arbitration clause or statutory authority, courts should not order consolidated arbitration. *See, e.g., Champ v. Siegel Trading Co., Inc.,* 55 F.3d 269 (7th Cir.1995); *Government of United Kingdom v. Boeing Co.,* 998 F.2d 68 (2d Cir.1993); *American Centennial Ins. v. National Casualty Co.,* 951 F.2d 107 (6th Cir.1991); *Baesler v. Continental Grain Co.,* 900 F.2d 1193 (8th Cir.1990); *Del E. Webb Constr. v. Richardson Hosp. Auth.,* 823 F.2d 145 (5th Cir.1987); *Weyerhaeuser Co.,* 743 F.2d at 635; *c.f. Compania Espanola de Petroleos S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966, 975 (2d Cir. 1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976)(holding that a district court could order consolidated arbitration pursuant to Federal Rules of Civil Procedure 42(a) and 81(a)(3)).

Accordingly, regardless of the wisdom of denying class certification because the agreement between the parties did not provide for class certification for arbitration purposes, *see Champ,* 55 F.3d at 277–78 (Ilana Diamond Rovner, J., concurring), this court is bound by circuit precedent, and thus is required to decline Plaintiff's invitation to certify a class.

### IV. Conclusion

 Section 3 of the FAA allows a court to stay the proceeding in an action and compel arbitration. 9 U.S.C.A. § 3. However, where all of the issues raised in a complaint must be submitted to arbitration, dismissal of an action is appropriate. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992); *Boyd v. Homes Of Legend, Inc.,* 981 F.Supp. 1423, 1997 WL 619208, * 20 (M.D.Ala.1997); *McCarthy,* 1994 WL 387852 at *9. Accordingly, the court will dismiss Plaintiffs' claims, with prejudice, and compel her to

submit them to binding arbitration pursuant to the arbitration provision in her contract.

## ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that:

(1) The collective Defendants' Motion To Compel Arbitration be and the same is hereby GRANTED.

(2) The collective Defendants' Motion To Stay Action be and the same is hereby DENIED.

(3) The collective Defendants' Motion To Dismiss be and the same is hereby GRANTED. Such dismissal is WITH PREJUDICE.

(4) Defendant Green Tree Financial Servicing Corporation be and the same is hereby DISMISSED as a party Defendant to this action.

(5) Plaintiff is herewith ENJOINED and RESTRAINED from failing forthwith to arbitrate her claims against the remaining Green Tree Defendants.

## *ORDER ON RECONSIDERATION*

Before the court is Plaintiff's Motion For Reconsideration filed December 10, 1997. Defendants filed a response on December 29, 1997. Plaintiff initially filed suit alleging violations of the Truth In Lending Act ("TILA") and the Equal Credit Opportunity Act ("ECOA"). Plaintiff also brought this action on behalf of a similarly situated class. On November 26, 1997, the court issued a Memorandum Opinion and Order ("Order") granting Defendants' Motion To Compel Arbitration, denying Plaintiff's request to certify a class, dismissing this action, with prejudice, and enjoining Plaintiff from failing to arbitrate her claims against the Defendants.

In its November 26, 1997 Order, the court noted that the only way Plaintiff could avoid arbitration would be through a showing of Congress' intent to preclude arbitration of TILA or ECOA claims. (Order at 9–11.) Such an intent must be shown either through the text of the Acts, their legislative histories, or from an inherent conflict between arbitration and the Acts' underlying purposes. (Order at 11.) Plaintiff bore the burden of showing why the arbitration agreement at issue in this case should not bind the parties. (Order at 6.)

In her Motion For Reconsideration, Plaintiff asserts that the court ignored "*the only binding precedent with respect to this particular issue*," namely *Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530 (M.D.Ala. 1997), *aff'd* 127 F.3d 40 (11th Cir.1997). (Mot. For Recons. at 1 (emphasis in original).) Plaintiff contends that *Waverlee Homes*, a decision rendered pursuant to the Magnuson–Moss Warranty–Trade Commission Improvement Act, controls the court's disposition of this action. In *Waverlee Homes*, the court analyzed highly detailed and specific provisions of the Magnuson–Moss Act and concluded that Congress intended to preclude binding arbitration of *written* warranty claims arising under the Act. *Id.* at 1537–39; *see also Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1435–37 (M.D.Ala.1997). In *Boyd*, however, the court concluded that *non-written and implied* warranty claims arising under the Magnuson–Moss Act could be subject to arbitration. *Boyd*, 981 F.Supp. 1423, 1440–41. in other words, the court found that even though Congress intended to preclude arbitration of *written* warranty claims under the Magnuson–Moss Act, it did not intend to preclude arbitration of *non-written or implied* warranty claims. *Boyd*, 981 F.Supp. 1423, 1437, 1440–41.

Significantly, these findings were made even though the Congressional intent of the Magnuson–Moss Act was to "improve the adequacy of information available to consumers, [and] prevent deception," *see Boyd*, 981 F.Supp. 1423, 1435–35. The court in *Waverlee Homes* rested its findings on *other, specific* provisions of the Act, not solely on Congress' stated intent in passing the Act. If it had, *Boyd* may have been decided differently. Indeed, in *Boyd*, the court ordered the arbitration of non-written and implied warranty claims arising under the Magnuson–Moss Act, *see Boyd*, 981 F.Supp. 1423, 1437, even though it declined to do so for written warranties in *Waverlee Homes*. *Waverlee Homes*, 954 F.Supp. at 1537–39. Accordingly, not only are *Waverlee Homes* and the *Boyd* inapplicable to the court's anal-

ysis under the TILA and the ECOA, Plaintiff is simply wrong in asserting that "[i]n both *Boyd* and [*Waverlee Homes*], the court found that enforcement of the arbitration clause at issue would override the desires of Congress in creating the legislation," (Mot. For Recons. at 2); wrong in asserting that "there is no distinction to be drawn between [Magnuson–Moss and TILA]" (*Id.* at 7); and misguided in asserting as support the fact that "all of these consumer protection statutes were passed in a relatively short period of time between 1968–1974." (*Id.*)

The court finds unpersuasive Plaintiff's assertions regarding class certification and finds it unnecessary to revisit that portion of its Order denying Plaintiff's request to certify a class. (Mot. For Recons. at 7–9.) Finally, Plaintiff requests that the court reconsider its Order enjoining Plaintiff from failing to arbitrate her claims against the Defendants. (Mot. For Recons. at 9.) Plaintiff asserts that she does not have the resources to arbitrate and that consequently her "only option . . . is to forego any claims that she may have . . . which is precisely why this defendant requires an arbitration agreement in each and every one of its contracts." (*Id.*) While mindful of the apparent inequitable result of requiring arbitration of TILA and ECOA claims and of not certifying a class, particularly in light of the consumer protection purposes of the Acts, this court finds and does not make law, and is bound by precedent and the mandates of the Eleventh Circuit Court of Appeals and the United States Supreme Court as it reads them. When and if either the Eleventh Circuit or the Supreme court hold that Congress intended to preclude arbitration of TILA and/or ECOA claims, or Congress expressly passes such legislation, this court will gladly modify and/or vacate its Order. Until then, it is CONSIDERED and ORDERED that Plaintiff's Motion For Reconsideration be and the same is hereby DENIED.