571 So.2d 1008 (1990)
Billy P. SHADRICK and Oren J. Heffner
v.
S. David JOHNSTON, et al.
89-476.
Supreme Court of Alabama.
September 7, 1990.
As Modified on Denial of Rehearing November 9, 1990.
*1009 Thomas P. Willingham of Huie, Fernambucq & Stewart, Birmingham, for appellants.
Gary C. Huckaby and G. Rick Hall of Bradley, Arant, Rose & White, Huntsville, for appellees.
ALMON, Justice.
This appeal is from a summary judgment for the defendants in an action arising from a sale of a corporation and a subsequent settlement agreement. The question is whether the settlement agreement extinguished the sellers' duty to defend an action against the corporation regarding a debt allegedly incurred before the sale or, at least, whether the agreement was ambiguous so as to make the duty to defend that action a question of fact. When the sellers discontinued their defense of that action, the purchasers brought this action, alleging breach of contract and fraud.
This action was filed on May 5, 1989, by Billy P. Shadrick and Oren J. Heffner ("Purchasers") against S. David Johnston, Gary D. Joyce, and Danny L. Wiginton ("Sellers"). The complaint alleged that on December 31, 1984, the parties had entered into a contract for the sale of Dalcor Properties, Inc.,[1] and that the contract "required the defendants to indemnify plaintiffs for any and all liabilities of the corporation which were owed by the corporation prior to the date of its purchase by the plaintiffs [and] to hold plaintiffs (purchasers) harmless from any lawsuits that resulted from debts which were owed by the corporation, prior to the date of its sale to the plaintiffs." The complaint recited that, on February 4, 1986, Dalcor had been named as a defendant in an action filed by Jefferson Title Corporation "as a result of debts allegedly owed to Jefferson Title by Dalcor for services performed by Jefferson Title, prior to the date of the purchase of Dalcor by the plaintiffs." Finally, the Purchasers alleged that the sellers had refused to provide legal representation in the Jefferson Title action or to indemnify the purchasers for any judgment that might be entered.
The Purchasers attached portions of the sale contract and the Jefferson Title complaint as exhibits to their complaint. The first count of the complaint alleged that the Sellers had breached the sale contract and thereby had caused the Purchasers to incur expenses to hire an attorney and to incur other damages. The second count alleged that the Sellers had fraudulently misrepresented that they would indemnify the Purchasers for and hold them harmless from "any liabilities accrued by" Dalcor prior to the date of the sale. The third count alleged that the Sellers had fraudulently misrepresented in the sale contract that they had no knowledge of any undisclosed liabilities of Dalcor when they had knowledge of *1010 the claim by Jefferson Title but did not disclose it.
The Sellers filed an answer denying the material averments of the complaint and raising affirmative defenses of release, accord and satisfaction, and the statute of limitations. They then filed a motion for summary judgment supported by the affidavit of Gary D. Joyce reciting briefly that, after the sale of Dalcor, disagreements had arisen between the parties and that, in December 1986, they had executed a settlement agreement, which, according to the affidavit, "represents the understanding of all the parties in order to settle the disputes between the parties to this litigation arising under the original Sales Agreement of December 31, 1984." Copies of the sale contract and the settlement agreement were attached to Joyce's affidavit.
The Purchasers responded with affidavits by Shadrick and Gaither S. Walser, the Purchasers' attorney for the negotiations leading to the execution of both the sale contract and the settlement agreement. They both stated the same facts, taken here from Shadrick's affidavit:
"The Settlement Agreement was never intended by the parties to relieve the sellers of any of their obligations under the Sales Agreement, dated December 31, 1984. This is clearly evidenced in paragraph 7 on page 4 of the Settlement Agreement.
"Further, during the negotiations of the Settlement Agreement Danny L. Wiginton represented to me that the sellers would fully abide by all of the terms and conditions of the Sales Agreement dated December 31, 1984.
"Additionally, Danny L. Wiginton, David Johnston, and Gary Joyce represented in the Settlement Agreement that they had not made any misrepresentations nor failed to disclose any matters to myself or Oren J. Heffner. This representation was not true, as at that time, Danny L. Wiginton had not disclosed to myself or Oren J. Heffner any of the debts made the subject matter of this lawsuit.
"Although Dalcor was made a party to the lawsuit initiated by Jefferson Title Corporation on February 4, 1986, Danny L. Wiginton had assumed the defense for Dalcor pursuant to his obligations under the Purchase Agreements hereinabove referred to. I did not become aware of Danny L. Wiginton's misrepresentation until shortly after November 14, 1988, when he withdrew his defense of Dalcor in the lawsuit initiated by Jefferson Title Corporation.
"At the time the Settlement Agreement was executed, Danny L. Wiginton had failed to disclose the debts he assumed prior to the date of closing of the Sale of Dalcor, to myself, Gaither S. Walser and Oren Heffner, as required by both the Sales Agreement and Settlement Agreement."
Thus, the motion for summary judgment was supported only by the documents themselves and by Joyce's statement that the settlement agreement "represents the understanding of all the parties in order to settle the disputes between the parties." The motion was opposed by the statements just quoted, by the documents as interpreted by the Purchasers, and by the Jefferson Title complaint. We therefore will quote the pertinent portions of the sale contract and the settlement agreement.
Section one of the contract, "Sellers' Representations and Warranties," included representations that the Sellers owned all of the outstanding stock, that there were no impediments on Dalcor's power to conduct business except for three legal actions (as to which the parties make no issue here), and that Dalcor would continue to operate its business in the normal manner until the closing of the sale. The following paragraphs "I" and "L" of section one are pertinent to this dispute:
"I. Liabilities of Corporation. On the date of closing the Corporation shall have sufficient cash on hand in its accounts to pay all accrued liabilities then owing, and if said cash on hand should be determined to be insufficient to pay all of said liabilities then accrued and owing on closing date, Sellers agree to advance to *1011 the Corporation such funds as shall be necessary for the Corporation to pay all of said liabilities, and Sellers agree to hold and save harmless the Purchasers and the Corporation from said liabilities. Sellers further warrant that the Corporation is not on the date of this agreement, and will not be at closing, party to any written or oral agreement except those incurred in the ordinary and usual course of business and employment contracts which may be terminated on thirty (30) days' notice. Sellers further warrant that they have no knowledge on the date of this agreement of any liability of the Corporation which they have not disclosed to the Purchasers."
"L. Warranties Survive Closing. The representations and warranties of the Sellers herein contained shall be true on and as of the closing date with the same effect as if made on and as of that date, unless otherwise specified. The foregoing representations and warranties shall survive the consummation on the closing of the transaction herein provided, for a period of two (2) years from such closing date. Anything herein to the contrary notwithstanding, all claims (except those for income taxes) against the Sellers arising under this agreement, whether under warranties or otherwise, shall be barred unless suit is filed thereon within two (2) years from the date of this Agreement."
The transfer of ownership took place shortly after the execution of the contract.
According to Shadrick's affidavit, Dalcor is "a general partner of various partnerships which owned apartment complexes in the Huntsville, Alabama, area." From the face of the settlement agreement, it appears that the principal dispute arose from the Purchasers' contention that the Sellers had misrepresented Dalcor's management fees from some of the properties listed in the sale contract. The settlement agreement included the following language:
"WHEREAS, certain disputes and controversies have arisen between the parties about said note[2] and agreement, and after the date of said agreements and note, Purchasers have asserted that certain representations by the Sellers prior to the execution of said agreements and note were untrue and that the Purchasers did not receive certain benefits under said agreements that they bargained for, including, but not limited to, the management of Stonebridge I and II; and
"WHEREAS, the parties in order to terminate said controversy and dispute have reached a settlement, accord, and agreement thereon and desire to memorialize the same herein;
"NOW, THEREFORE, for and in consideration of the mutual promises herein contained, the parties agree as follows:
". . . .
"7. Except as expressly described in this Agreement, and the Agreements among the parties (i) dated August 10, 1984, as amended by Agreement dated December 31, 1984, for the purchase of Dalcor Management, Inc.,[3] and (ii) dated December 31, 1984, for the purchase of Dalcor Properties, Inc. Purchasers hereby release, quitclaim and discharge the Sellers from any and all claims, demands, and actions, whether now existing or whether they may hereafter accrue and whether known or unknown. Anything herein to the contrary notwithstanding, subparagraph P of paragraph 1 of the agreement between the parties dated August 10, 1984, and subparagraph L of paragraph 1 of the agreement dated December 31, 1984, are amended to provide that the representations and warranties of the Sellers shall not survive the execution of this settlement agreement and are *1012 of no further force and effect. Purchasers hereby release, quitclaim, and discharge the Sellers from any and all claims, demands, and actions, whether now existing or whether they may hereafter accrue and whether known or unknown."
Almost two years after the settlement agreement, on November 14, 1988, the Sellers withdrew their defense of the Jefferson Title action and allegedly refused to indemnify the Purchasers for any judgment that might be entered in that action. The Purchasers brought this action on May 5, 1989.
The language of paragraph seven appears to be a complete discharge of the Sellers from all further liability under the sale contract, but the Purchasers argue that the exception at the beginning of that paragraph includes the pending claim by Jefferson Title. Paragraph seven discharges the purchasers "[e]xcept as expressly described in ... [the contract] dated December 31, 1984, for the sale of Dalcor Properties, Inc." The Purchasers claim that this exception includes the provision in paragraph I of the sale contract, whereby the Sellers agreed to transfer the corporation with enough cash on hand to pay all accrued liabilities, to advance such sums as might be needed if the cash on hand was insufficient, and to hold the Purchasers harmless from any such liabilities. They also argue that the Jefferson Title claim represents such an accrued liability and, thus, was excepted from the settlement agreement.
The Sellers respond by saying that the Purchasers did not offer any evidence in opposition to the summary judgment motion tending to show that the accrued liabilities, even including the Jefferson Title action, exceeded the cash on hand at closing. The initial burden on a summary judgment motion, however, is on the movant. Rule 56(e), Ala.R.Civ.P., reads in part: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading." (Emphasis added.) The Sellers never offered any evidence tending to show that they conveyed Dalcor with enough cash on hand to satisfy all accrued liabilities, so the Purchasers had no burden to negate that fact in order to defeat the summary judgment motion.
In fact, the Sellers make the following statement in their brief: "Of course, it is undisputed that the Sellers initially provided indemnity and a defense as to the Jefferson Title claim, and they had no obligation to do so absent an accrued liability, i.e., a valid debt." Thus, the Sellers virtually admit that the Jefferson Title claim was an accrued liability within the meaning of paragraph I of the sale contract and rest their defense principally upon the release language in the settlement agreement. They argue that the settlement agreement represented the outcome of a complete negotiation of the disputes, obligations, and rights between them and the Purchasers; that they agreed, among other things, to delay for two years payment of $300,000 of the consideration for the sale; and that the Jefferson Title claim was included in that settlement. They argue that all the representations and warranties in the sale contract, including those in paragraph I, were explicitly and unambiguously discharged by the settlement agreement.
The pertinent language of the settlement agreement is a release. Releases must be given effect according to the intentions of the parties. Ala.Code 1975, § 12-21-109.
"As with other contracts, where the language of a release is clear and unambiguous, its effect can be determined as a matter of law and extrinsic evidence is inadmissible to vary its terms. However, if the instrument is ambiguous in any respect, extrinsic evidence is admissible to show the intent of the parties, which is a question for the finder of fact. The initial determination of whether the contract is ambiguous is a question of law.
"A contract which is clear on its face nevertheless may be ambiguous if there is a collateral matter which makes its meaning uncertain. This concept of a `latent' ambiguity is an exception to the general rule that the court cannot look at *1013 matters extrinsic to a facially clear and definite contract."
Williams v. Nolin, 484 So.2d 428, 429 (Ala. 1986) (citations omitted). Williams cites most of the principles stated in the above quotation to Mass Appraisal Services, Inc. v. Carmichael, 404 So.2d 666 (Ala.1981).
The release language in paragraph seven of the settlement agreement is facially ambiguous. It releases all claims arising out of the sale contract "except as expressly described" in the sale contract. The meaning of that exception is unclear, because the sale contract obviously would not have described any exceptions to a then-uncontemplated future release. Paragraph seven cannot have excepted every obligation under the sale contract, because such an exception would swallow the release. Even so, the Purchasers are entitled to insist that the exception has some meaning, that it is not mere surplusage. The ongoing Jefferson Title action, which is not mentioned in the settlement agreement, is a perfect candidate for an obligation intended to be included in the exception, as an accrued liability for which the Sellers would hold the Purchasers harmless as "expressly described" in the sale contract. However, resolution of that dispute is not appropriate on a summary judgment motion. "[O]nce the court determines that an instrument is ambiguous or uncertain in any respect, it becomes a question for the factfinder to determine the true meaning of the contract." Rivers v. Oakwood College, 442 So.2d 74, 76 (Ala.1983).
The existence of the ambiguity is further shown by the fact that the Sellers did not withdraw from their defense of the Jefferson Title action until nearly two years after the settlement agreement was executed. That fact would support a conclusion that the release was latently ambiguous even if it were not patently ambiguous.
The Sellers argue that this action is barred by the two-year limitations period of paragraph L of the sale contract. That argument might have merit if the Sellers had initially denied any liability for the Jefferson Title claim when it was filed in February 1986; in such a situation, the Purchasers might have been obligated under paragraph L to assert their claim by December 31, 1986. However, paragraph L provides no bar in this situation, for two reasons. First, the Purchasers had no claim to assert, or at least no cause of action, so long as the Sellers acknowledged their duty to defend. The "accrued liability" was asserted against the Sellers within the two-year period of paragraph L, and they undertook to hold the Purchasers harmless from the claim that it was an accrued liability, whether by defeating the claim or by paying any judgment.
Second, the Sellers cannot now invoke the limitations period of paragraph L, because of the principle that one who induces an injured party not to file a claim within a period of limitations cannot, when the claim is filed after the expiration of the period, invoke the bar imposed thereby. To be estopped from raising a statute of limitations, a defendant must have affirmatively induced the plaintiff to delay bringing the action. City of Birmingham v. Cochrane Roofing & Metal Co., 547 So.2d 1159 (Ala. 1989); Sokol v. Bruno's, Inc., 527 So.2d 1245 (Ala.1988); Arkel Land Co. v. Cagle, 445 So.2d 858 (Ala.1983). This action was brought well within the six-year statutory limitations period of Ala.Code 1975, § 6-2-34(4), for actions on contracts. The Sellers' undertaking to defend the Jefferson Title claim estops them from now invoking the contract's two-year limitations period.
The above discussion relates principally to the Purchasers' claim for breach of contract. Before turning to the two fraud claims stated in the complaint, we note that the Purchasers argue that the Sellers fraudulently induced them to sign the settlement agreement. The Sellers respond by arguing that the Purchasers did not plead such a claim and so cannot argue it now. While we agree that the Purchasers have stated no affirmative claim for relief based on such a fraud, we note that the argument is made principally to defeat the Sellers' affirmative defense. No pleading in response to the answer raising that defense was required unless specifically ordered *1014 by the trial court. Rule 7(a), Ala.R. Civ.P. In fact, the affidavits submitted by the Purchasers sufficiently raised this matter in reply to the affirmative defense. Because we do not hinge our reversal on this argument, but rather on the ambiguity of the settlement agreement, we make no comment on the Sellers' argument that a party cannot avoid the effect of a release by alleging fraud in the inducement unless he offers to return the consideration for the release. See, e.g., Taylor v. Dorough, 547 So.2d 536 (Ala.1989).
We now turn to the two fraud claims: that the promise to hold the Purchasers harmless from any accrued liabilities was fraudulently made, and that the statement in paragraph I that they had no knowledge of any undisclosed liability was a misrepresentation because of their failure to disclose the existence of the Jefferson Title claim.
The Sellers argue that summary judgment on count two, the first fraud claim, was appropriate because, they argue, the materials submitted on the summary judgment motion tended to show that they, at the time of making the promise to hold the Purchasers harmless, intended to keep that promise, and because the Purchasers did not introduce any evidence to the contrary. A fraud action based on a promise to perform an act in the future requires a showing that the promisor, at the time of making the promise, intended not to perform it. Reynolds v. Morton, 534 So.2d 1052 (Ala.1988); Green Tree Acceptance, Inc. v. Doan, 529 So.2d 201 (Ala.1988). We agree that the defense of the Jefferson Title claim for two years and nine months does tend to show that the Sellers intended to hold the Purchasers harmless at the time they promised to do so. The Sellers' showing on the summary judgment motion concentrated exclusively on their position that the settlement agreement barred all the Purchasers' claims; they made no attempt to support a summary judgment on the basis now alleged. Because we disagree with the implicit holding that the settlement agreement bars all three claims, and because the Purchasers have not had an adequate opportunity to oppose the basis for summary judgment now asserted, we reverse the summary judgment on count two for further proceedings on that claim.
The Sellers argue that summary judgment was also appropriate on count three, the second fraud claim, because, they say, the Purchasers were made aware of the Jefferson Title claim on or about February 4, 1986. A fraud claim based on the alleged misrepresentation that the Sellers were not aware of any unstated accrued liabilities could be barred after the expiration of two years from that date under the limitations period of Ala.Code 1975, § 6-2-38, unless the Purchasers can come within the delayed discovery provision of § 6-2-3. The Purchasers submitted affidavits stating that they were not aware of the alleged misrepresentation concerning the Jefferson Title claim until the Sellers stopped defending that action in November 1988.
The Sellers respond by saying that the summons of the Jefferson Title action was directed to Dalcor Properties, Inc., in February 1986, well after the Purchasers had taken over the ownership of Dalcor. However, that summons was addressed to Dalcor at "55 Central Bank Bldg., Huntsville, AL 35801." Exhibits to the settlement agreement include letters typed on the stationery of an accounting firm with an address of "100 Central Bank Building, Huntsville, Alabama 35801." That stationery lists all three of the Sellers as being C.P.A.'s "of counsel" to the firm. The Purchasers are residents of North Carolina. There is no evidence in the record indicating that the Purchasers had actual knowledge of the Jefferson Title action contrary to their affidavits, and the indirect evidence by way of the summons tends at least as much to show that the Sellers may have been immediately notified of the action as it does to show that the Purchasers received the summons and complaint and forwarded them to the Sellers.
Thus, the summary judgment is reversed. We note that any construction of the settlement agreement made in an effort *1015 to resolve the ambiguties would presumably be governed by the following rule recently adopted by this Court:
"[W]here sophisticated, intelligent business persons who are each represented by legal counsel enter into a contract after an arm's-length negotiation wherein all parties have ample opportunity to negotiate all of the contract's terms, the contract's ambiguities should not be strictly construed against the drafter."
Western Sling & Cable Co. v. Hamilton, 545 So.2d 29, 31 (Ala.1989).
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.

ON APPLICATION FOR REHEARING
ALMON, Justice.
OPINION MODIFIED; APPLICATION FOR REHEARING OVERRULED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
NOTES
[1] The complaint also made averments concerning the sale of Southern Housing Partnerships, Inc., a wholly owned subsidiary of Dalcor. Because those averments simply repeat the ones regarding Dalcor, we omit them for simplicity's sake.
[2] The settlement agreement states that, pursuant to the contract of sale, the Buyers had executed a promissory note for $4,000,000.
[3] The August 1984 contract for the sale of Dalcor Management is not in the record before us, and, although there are references in the December 1984 contract to an August contract for the sale of Dalcor Management, there is no clear explanation in the record of the relationship between those two sale contracts.