736 So.2d 597 (1999)
CRIMSON INDUSTRIES, INC.
v.
Howard R. KIRKLAND and Linda Kirkland.
No. 1972202.
Supreme Court of Alabama.
June 4, 1999.
*598 David L. Selby II and Michael L. Jackson of Wallace, Jordan, Ratliff & Brandt, L.L.C., Birmingham, for appellant.
Donald H. Brockway, Jr., Birmingham, for appellees.
PER CURIAM.
This appeal involves the question whether the manufacturer of a mobile home is entitled to enforce an arbitration agreement.
The basic facts are undisputed. Howard Kirkland and Linda Kirkland ordered a mobile home from a retailer, Youngblood Enterprises, Inc. ("Youngblood"). The mobile home was manufactured by Crimson Industries, Inc. ("Crimson"). On October 17, 1996, the Kirklands and Youngblood executed a sales contract that contained a merger clause, which read: "This agreement contains the entire understanding between you and me and no other representation or inducement, verbal or written, has been made which is not contained in this contract." The sales contract also specifically stated that the word "you" referred to the dealer, Youngblood, and that the word "me" referred to the buyers, the Kirklands. There was no indication that Crimson was a party to that sales contract.
In November 1996, the mobile home was delivered to the Kirklands and was "set up" on their property. The Kirklands paid connection fees to obtain electric, telephone, and water service. On January 11, 1997, a certificate of title was issued, and on January 14, 1997, at the closing of the sale, and "[a]s part of the consideration for the sale," Youngblood presented an arbitration agreement to Mr. Kirkland, which he executed. The arbitration agreement read as follows:
"AGREEMENT FOR BINDING ARBITRATION"
"This agreement for binding arbitration is this date entered between Howard R. Kirkland hereinafter called `Buyer' and Youngblood Enterprises, Inc., a corporation, hereinafter called `Seller'.
"Buyer has this date purchased from Seller a mobile home described as follows:
 Crimson 1997 CALS 7540
 Make Year Serial Number
"As part of the consideration for the sale of the said mobile home, Buyer and *599 Seller hereby enter into this agreement for binding arbitration, each intending to be mutually bound by the terms of this agreement.

"Buyer and Seller acknowledge that the said mobile home is a product manufactured and sold in interstate commerce and that the provisions of the Federal Arbitration Act are applicable to this contract. The parties further acknowledge that the sale of the said mobile home is a transaction involving interstate commerce.
"Buyer and Seller agree, covenant and consent, that any and all controversies or claims arising out of or in any way relating to the sale of the said mobile home and the negotiations leading up to the sale, whether in the nature of covenant, warranty, misrepresentation, rescission, any breach of contract, or other tort, shall be settled solely by arbitration in accordance with the applicable Rules of the American Arbitration Association then in effect, and that judgment upon the award rendered by the arbitrators may be entered in and enforceable by any court of competent jurisdiction. Buyer and Seller further agree that they shall submit any and all disputes, controversies and cases arising out of the negotiations for and the sale and service of the mobile home, whether in the nature of contract, warranty, or tort, to the decision of the three-person arbitration panel. Buyer and Seller agree that they shall be bound by the determination of the said arbitration panel. The arbitration panel shall be appointed by the applicable national panel of arbitrators in accordance with the American Arbitration Association's rules for appointment of such panels. In accordance with the American Arbitration Association, the Buyer and Seller agree that any and all arbitration proceedings arising hereunder shall be held in the county of sale, which is Jefferson, Alabama.
"Buyer and Seller agree that this agreement shall cover any and all disputes, claims or controversies between them, including but not limited to warranty claims, service or repair disputes, set-up or installation disputes, breach of contract, misrepresentations claims [sic], rescission or revocation, loss of use, claims involving fitness for a particular purpose of merchantability [sic], and all other claims arising out of or in any way related to the sale and service of the said mobile home.
"It is further agreed by the parties that all rights, privileges and responsibilities under this agreement shall expressly inure to the benefit of the manufacturer of the said mobile home insofar as any claims may exist or hereafter arise against the manufacturer, including but not limited to, enforcement of warranties, whether express or implied. It is further acknowledged, agreed and stipulated to by the partied [sic] hereto that each of them acknowledges the benefit of including any and all claims which might be asserted against the said manufacturer in relation hereto in any arbitration proceeding contemplated hereby and, as such, each part [sic] shall, for purposes of judicial economy, decreased expense and justice expressly acquiesce in and be bound to settle such claims against the manufacturer by arbitration.

"The agreement is part of the contract of sale this date entered into this date between Buyer and Seller [sic], the terms and provisions of which are incorporated herein by reference, and shall be binding upon and inure to the benefit of their respective heirs and assigns."
(Emphasis added.)
The Kirklands subsequently sued Youngblood and Crimson, asserting claims based on breach of contract, fraudulent misrepresentation, fraudulent suppression, negligence, wantonness, and breach of warranty. Crimson moved to dismiss the claims against it and also filed a motion *600 asking the trial court to compel the Kirklands to arbitrate their claims.[1] The trial court denied Crimson's motion in part and granted it in part, ruling that the Kirklands must arbitrate all claims based on events occurring on or after January 14, 1997, the date the arbitration agreement was signed, but that the Kirklands did not have to arbitrate any claim based on events that had occurred before that date. Crimson appeals. We reverse and remand.
Before we address the reasons for reversing, we address this Court's power to entertain the appeal, and our scope of review. Crimson indicates in its reply brief that it is appealing only that portion of the trial court's order that denied arbitration, i.e., that part that denied arbitration of claims based on events that had occurred before January 14, 1997. Based on this Court's prior holding that "[i]n the absence of taking an appeal, an appellee may not cross-assign error," we will consider only that portion of the trial court's order that Crimson indicated it was appealing. Beaty v. Head Springs Cemetery Ass'n, 413 So.2d 1126, 1128-29 (Ala.1982).
Our caselaw holds that an appeal is the appropriate method for challenging a trial court's denial of a motion to compel arbitration. See A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990). This Court's review of a trial court's refusal to compel arbitration is de novo. See Ex parte Warrior Basin Gas Co., 512 So.2d 1364, 1368 (Ala.1987). This standard of review is similar to that employed in the federal courts, which have consistently said that "determinations of arbitrability, like the interpretation of any contractual provision, are subject to de novo review." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474 (9th Cir.1991), cert. denied, 503 U.S. 919, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992).[2]
In discussing the standard of review an appellate court should use in determining whether a trial court has correctly ruled on questions of law, this Court has held that the trial court's rulings "do not fall within the trial court's discretionary function; thus, if alleged error is properly preserved and presented on appeal, these rulings are subject to de novo review, i.e., a review without any assumption of correctness." King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 716 (Ala.1987). See Otis Elevator of Gadsden, Inc. v. Scott, 586 So.2d 200 (Ala.1991); see also Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1270-71 (Ala.1995) (Maddox, J., dissenting on overruling application for rehearing). Based on these authorities, we apply the de novo standard of review.[3]
Having determined that we review the issue of arbitrability without any presumption *601 in favor of the trial court's ruling, we address the legal issue presented: Did the Kirklands, under the particular facts and circumstances of this case, agree to arbitrate any claim they might have against Crimson? Although Crimson was not a signatory to the original sales contract, we conclude that the arbitration agreement, although executed separately and much later than the sales contract, is controlling.
It is undisputed that the sales contract was executed on October 17, 1996, and that it contained a merger clause. However, we do not find the merger clause to be controlling. A merger clause operates only to establish that a written agreement is a completely integrated document, into which all prior and contemporaneous negotiations are merged. E. Allan Farns-worth, Contracts § 7.3 (2d ed.1990). When an agreement contains a merger clause, as the initial sales contract did here, "the parol evidence rule bars evidence of prior negotiations for at least some purposes." Id. See generally, Crown Pontiac, Inc. v. McCarrell, 695 So.2d 615 (Ala.1997) (holding that an arbitration provision contained in an initial contract was unenforceable because a later contract containing a merger clause had no provision for arbitration). Because the parol evidence rule "applies only to evidence of priorand, as is sometimes said, contemporaneousnegotiations, it does not exclude evidence of negotiations that took place after the written agreement was made." Farnsworth, Contracts § 7.3. In this case, the arbitration agreement was executed at the closing of the sale, three months after the sales contract had been executed. The merger clause in the sales contract applies only to prior or contemporaneous negotiations.
Before they executed the arbitration agreement, the Kirklands had received the mobile home, had set up utility service, and had obtained a certificate of title. However, these facts are not dispositive of the question whether the arbitration provision is enforceable. Stated differently, the fact that the sale had been substantially completed before the arbitration agreement was executed is not controlling. Parties can agree to arbitrate disputes concerning prior transactions. See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330, 332 (10th Cir.1993) (requiring arbitration of a customer's claims against a brokerage firm even though the contested transaction predated the execution of the arbitration agreement providing for the arbitration of "any controversy ... arising out of [plaintiffs] business or this agreement"). This Court has similarly enforced arbitration provisions as to prior disputes. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton, 719 So.2d 201 (Ala.1998) (enforcing an arbitration agreement so as to require the plaintiffs to arbitrate claims that were actually pending before the trial court at the time the arbitration agreement was executed in an unrelated matter); and First Family Financial Services, Inc. v. Rogers, 736 So.2d 553 (Ala.1999) (enforcing an arbitration provision so as to require the plaintiffs to arbitrate claims arising from two loan transactions that had occurred several years before the arbitration agreement was executed).
Further, the scope of the arbitration agreement is sufficiently broad to cover the Kirklands' claims against Crimson. The agreement specifically states that "all rights, privileges and responsibilities under this agreement shall expressly inure to the benefit of the manufacturer of the said mobile home insofar as any claims may exist or hereafter arise against the manufacturer, including but not limited to, enforcement of warranties, whether express or implied."
We reverse that portion of the trial court's order that denied arbitration of the plaintiffs' claims (as explained earlier, that is the only portion of the order that is *602 before us). The cause is remanded for an order consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, and BROWN, JJ., concur.
LYONS, J., concurs in part in the rationale but dissents from the judgment.
KENNEDY and JOHNSTONE, JJ., dissent.
LYONS, Justice (concurring in part in the rationale but dissenting from the judgment).
I concur in the majority's holding that the scope of the arbitration agreement encompasses disputes based on events that had occurred before the arbitration agreement was entered. I dissent from the majority's treatment of the scope of the issues before the Court on this appeal and from the resulting reversal of the trial court's order.
The majority first determines that the issue of the validity of the separately tendered arbitration agreement on the ground of lack of consideration is not before us and it premises its judgment in this case on a conclusion that the arbitration agreement is valid. The majority thus confines its review to issues arising from the trial court's refusal to compel arbitration of disputes based on events occurring before January 14, 1997, the date the arbitration agreement was signed. The trial court implicitly rejected the defense of lack of consideration by granting arbitration as to claims based on events occurring after the arbitration agreement was entered, and then denying arbitration as to claims based on events occurring before that. The majority correctly determines that the trial court erroneously construed the scope of the agreement to be limited to disputes based on events arising after the date of the agreement.
The majority concludes that the portion of the trial court's order implicitly finding the subsequently executed arbitration agreement valid, by compelling arbitration as to claims based on events occurring after January 14, 1997, is not before this Court because the Kirklands did not cross appeal as to that portion of the order. Nonetheless, Crimson acknowledges that the Kirklands resisted arbitration in the trial court, arguing there that the arbitration agreement was void for lack of consideration.
Review of an order compelling arbitration is by way of mandamus. Lopez v. Home Buyers Warranty Corp., 670 So.2d 35 (Ala.1995). I am troubled by the preclusive effect the majority gives the Kirklands' failure to cross appeal in a setting where their remedy, at this stage of the proceedings, is only by way of mandamus, a form of permissive review, while the party challenging a denial of arbitration can appeal as a matter of right. This kind of anomaly suggests it might be wise to revise our procedure so as to make an order granting arbitration, as well as an order denying arbitration, subject to the right of appeal. However, until such a change in our procedure is made, I would not visit upon the Kirklands the ordinary consequences of a failure to cross appeal, in a setting where they could not attack the order by a direct appeal and where they urged the trial court to deny arbitration on a particular ground and the trial court rejected that ground.
This Court recently analogized an order compelling arbitration to a ruling on a motion for a summary judgment. Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454 (Ala.1999). I would extend the analogy to orders denying arbitration. An appellee, without filing a cross appeal, may offer in support of a summary judgment any argument supported by the record even if that argument was rejected by the trial court. McMillan, Ltd. v. Warrior Drilling & Eng'g Co., 512 So.2d 14 (Ala. 1986).
*603 Although the Kirklands did not seek review of that aspect of the trial court's order compelling arbitration of claims based on events occurring after the arbitration agreement was entered, I would treat the defense of lack of consideration as a potential alternative ground for affirming the partial denial of arbitration.
I now consider the merits of that defense. As I interpret the United States Supreme Court's construction of the Federal Arbitration Act, particularly 9 U.S.C. § 4, in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), questions concerning the making of the arbitration agreement itself and the sufficiency of consideration to support it are questions for the court. Moreover, the issue whether the parties have agreed to arbitrate is not subject to a presumption favoring arbitration. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).
In support of their argument that the arbitration agreement should fail for lack of consideration, the Kirklands presented Howard Kirkland's affidavit, which states:
"There was no consideration received by us for the Agreement to Arbitrate. The Agreement to Arbitrate was a document presented to us on January 14, 1997 at the closing. By that date, we had already taken substantial steps in the performance of our contract of October 17, 1996, and had received the substantial benefit of our bargain. The home had already been delivered to us pursuant to that contract."
The contract documents on which the Kirklands rely were attached to the affidavit as exhibits. The record does not reflect that Crimson presented any evidence to contradict the affidavit. Crimson merely pointed out in its response that the arbitration agreement states: "As part of the consideration for the sale of the said mobile home, Buyer and Seller hereby enter into this agreement for binding arbitration...."
As a general principle, the parol evidence rule bars any evidence that contradicts the terms of a written agreement. Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). Parol evidence, however, "is always admissible to show that an instrument is void or to show a lack or failure of consideration." Parker v. McGaha, 294 Ala. 702, 707, 321 So.2d 182, 185 (1975).
"`The consideration of contracts in writing is in general open to inquiry, and it is not an infringement of the rule excluding parol evidence, to add to, vary, or contradict writings, to receive parol evidence of the actual consideration, for the purpose of determining its validity, or its failure, or that from any cause it is sufficient or insufficient to support the contract.'"
Chandler v. Lamar County Bd. of Educ., 528 So.2d 309, 313 (Ala.1988) (quoting Hamaker v. Coons, 117 Ala. 603, 610, 23 So. 655, 658 (1898) (citations omitted)).
In the trial court, Crimson cited Randolph v. Green Tree Financial Corp., 991 F.Supp. 1410 (M.D.Ala.1997), for the proposition that "no severable or identical consideration is required for an arbitration provision to be enforceable." 991 F.Supp. at 1422 (citing Northcom, Ltd. v. James, 694 So.2d 1329, 1335-36 (Ala.1997), overruled in part on other grounds by Ex parte McNaughton, 728 So.2d 592 (Ala. 1998)). In both Randolph and Northcom, however, the arbitration provision was contained in a larger contract and in those cases neither this Court nor the United States District Court required consideration for the arbitration provision beyond the consideration for the larger contract itself. The Randolph court went on to say: "The [Alabama Supreme Court] merely required ample consideration between the parties in the contract the arbitration provision governs." 991 F.Supp. at 1422.
The arbitration agreement before the Court is a separate contract that was executed several months after the parties had *604 executed the sales contract. "`It is an established principle that the doing or undertaking to do only that which one is already under a legal obligation to do by his contract is no consideration for the secondary, subsequent, or new agreement.'" Little v. Redditt, 264 Ala. 371, 375, 88 So.2d 354, 357 (1956) (quoting Moore v. Williamson, 213 Ala. 274, 277, 104 So. 645, 648 (1925)).
I would affirm that aspect of the trial court's order denying arbitration, on the ground that this record supports that aspect of the ruling on a ground that was presented and rejectedlack of consideration for the agreement to arbitrate.
JOHNSTONE, Justice (dissenting).
I dissent, and I concur with Justice Lyons's special writing in its treatment of the Kirklands' right to a review of the order compelling arbitration and their argument of failure of consideration.
NOTES
[1] Youngblood also moved to compel arbitration, but Youngblood's motion is not involved in this appeal. The trial court had not ruled on it when this appeal was taken.
[2] See, e.g., Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16 (2d Cir.1995); Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511 (10th Cir.1995); Tracer Research Corp. v. National Envtl. Servs. Co., 42 F.3d 1292 (9th Cir.1994); McMahan Sec. Co. L.P. v. Forum Capital Mkts. L.P., 35 F.3d 82 (2d Cir.1994); Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir.1993); Luckie v. Smith Barney, Harris Upham & Co., 999 F.2d 509 (11th Cir.1993); Britton v. Coop Banking Group, 4 F.3d 742 (9th Cir.1993); Saari v. Smith Barney, Harris Upham & Co., 968 F.2d 877 (9th Cir.), cert. denied, 506 U.S. 986, 113 S.Ct. 494, 121 L.Ed.2d 432 (1992); Storey v. Shearson Lehman Hutton, Inc., 949 F.2d 1039 (8th Cir. 1991); Catholic Diocese of Brownsville, Texas v. A.G. Edwards & Sons, Inc., 919 F.2d 1054 (5th Cir.1990); Paulson v. Dean Witter Reynolds, Inc., 905 F.2d 1251 (9th Cir.1990); Nordin v. Nutri/System, Inc., 897 F.2d 339 (8th Cir.1990); Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers Int'l, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).
[3] Our decision regarding the standard of review does not affect this Court's holding in Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897 (Ala.1995), in which it held that a trial court's determination as to whether a party had waived the right to compel arbitration should be reviewed under the abuse-of-discretion standard.