777 So.2d 94 (2000)
W.D. WILLIAMS, INC., d/b/a Williams Mitsubishi
v.
Mary L. IVEY.
1980212.
Supreme Court of Alabama.
June 30, 2000.
*95 William L. Lee III, William L. Lee IV, and William W. Nichols of Lee & McInish, Dothan, for appellant.
Charles D. Decker, Dothan, for appellee.
PER CURIAM.
Mary L. Ivey purchased an automobile from a dealership operated by W.D. Williams, Inc., d/b/a Williams Mitsubishi. She later sued Williams Mitsubishi in the Houston Circuit Court, stating various claims related to her purchase of the automobile. The defendant Williams Mitsubishi moved to compel Ivey to arbitrate her claims. The trial court denied its motion. Williams Mitsubishi appeals from the order denying its motion to compel arbitration. We affirm.
In May 1996, Mary Lynn Ivey, a 41-year-old college graduate, purchased a used automobile from Williams Mitsubishi. Ivey purchased it from salesman Radney Williams, whom she had known for approximately seven years and from whom she had previously bought other vehicles.[1] Shortly after the purchase, Ivey began experiencing problems with the vehicle.
Ivey sued Williams Mitsubishi, alleging misrepresentation, seeking damages under Ala.Code 1975, § 7-2-714 (relating to breach of contract by delivery of nonconforming goods), and alleging breach of an express warranty and an implied warranty. Ivey also alleged that Williams Mitsubishi had violated the Magnusson-Moss Warranty Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301 to 2312. Williams Mitsubishi moved to compel arbitration, based upon an arbitration agreement it claims Ivey signed when she purchased the vehicle.[2]
The arbitration agreement reads, in pertinent part, as follows:
"ARBITRATION AGREEMENT
"Buyer/lessee acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce.
"Buyer/lessee and dealer agree that all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle, terms and provisions of the sale, lease or financing agreement, arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease or financing shall be settled by binding arbitration conducted pursuant to the provisions of 9 U.S.C. Section 1 et seq. and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease or financing, and its condition, including *96 disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease, or financing, any representations, promises or omissions made in connection with negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle.
"Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The buyer/lessee and the dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where the dealer's facility is located."
The trial court held a hearing on the motion to compel arbitration. The first witness to testify was Michael Williams, owner and president of Williams Mitsubishi. Mr. Williams testified that the standard practice at Williams Mitsubishi is to have the customer sign the bill of sale, the contract for financing, insurance forms, the title application, a statement relating to the odometer reading, a power of attorney, and an arbitration agreement, all at the same time. He stated that the forms are ordinarily typewritten, but that the arbitration agreement is sometimes handwritten. Williams further stated that Ivey was not forced to sign any document pertaining to the sale of the automobile; however, he acknowledged that he was not present when she signed the paperwork related to the purchase.
Radney Williams,[3] besides working as a salesman, was the finance and insurance manager with Williams Mitsubishi at the time Ivey bought the car. He testified that Ivey signed the arbitration agreement on May 4, 1996, as part of the paperwork the company required for a sale. He stated that he had known Ivey for seven or eight years and had sold her vehicles in the past. He further testified that in selling cars he always explained the arbitration agreement to the customer and always gave the customer an opportunity to read the arbitration agreement before signing it. In accordance with that usual practice, he said, he gave Ivey an opportunity to read the arbitration agreement before she signed it.
Ivey acknowledged that her signature was on the arbitration agreement. She admitted that the arbitration agreement did not contain any words that she could not understand and that she had not been forced to sign that agreement. She stated, however, that she chose not to read the agreement before signing it. She further testified that she was completely unaware that she had signed an arbitration agreement until Williams Mitsubishi moved to compel arbitration. Ivey additionally testified that she did not sign the arbitration agreement until after she met with Michael Williams on June 12, 1996, to discuss problems she was experiencing with the vehicle.[4] Ivey alleged that Radney Williams contacted her after she met with Michael Williams, and informed her that he needed her signature on a paper. Ivey says Radney Williams had led her to believe she was signing a paper related to the car she had traded in and that he had covered the paper with a file folder so that she could not see what she was signing.
*97 The trial court denied Williams Mitsubishi's motion to compel arbitration, but indicated no grounds for the denial. Williams Mitsubishi appeals from the order denying arbitration.[5]
We must first determine the standard of review applicable in this case. Ivey argues that the trial court made findings of fact based on ore tenus evidence; that such findings are presumed correct; and that an order based on those findings shall not be disturbed on appeal unless the findings are palpably wrong, manifestly unjust, or without supporting evidence. She cites Ex parte South Carolina Ins. Co., 683 So.2d 987 (Ala.1996); Ex parte Pielach, 681 So.2d 154 (Ala.1996); Lawrence County v. Decatur Gen. Hosp., 675 So.2d 393 (Ala. 1996); and Jefferson County v. City of Leeds, 675 So.2d 353 (Ala.1995). Ivey contends that we should apply an abuse-of-discretion standard of review in cases such as this one, where the trial court has denied a motion to compel arbitration, citing Ex parte Napier, 723 So.2d 49 (Ala.1998), and Capital Investment Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997).
In Patrick Home Center, Inc. v. Karr, 730 So.2d 1171 (Ala.1999), this Court determined, for the first time, that appellate review of a trial court's refusal to compel arbitration is de novo:
"In discussing the standard of review an appellate court should use in determining whether a trial court has correctly ruled on a question of law, this Court has held that `rulings on these motions do not fall within the trial court's discretionary function; thus, if alleged error is properly preserved and presented on appeal, these rulings are subject to de novo review, i.e., a review without any assumption of correctness.' King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 716 (Ala.1987). See Otis Elevator of Gadsden, Inc. v. Scott, 586 So.2d 200 (Ala.1991); see also Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1270-71 (Ala.1995)(Maddox, J., dissenting from order overruling application for rehearing). Based on these authorities, we conclude that we are to apply the de novo standard of review in a case like this one."
Id. at 1172.
A number of recent cases have also applied the de novo standard of review, relying on Patrick Home Center. See First American Title Ins. Corp. v. Silvernell, 744 So.2d 883 (Ala.1999); Jim Burke Automotive, Inc., v. Murphy, 739 So.2d 1084 (Ala.1999)(a motion to compel arbitration presents a question of law; thus, an appellate court will review a ruling on such a motion de novo); Crimson Indus., Inc. v. Kirkland, 736 So.2d 597 (Ala.1999) (review of a trial court's order refusing to compel arbitration is de novo without a presumption that the trial court was correct).[6]
However, in Capital Inv. Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997), this Court applied the abuse-of-discretion standard in reviewing an order denying a motion to compel arbitration.
Because it appears this Court has applied different standards of review in cases where the trial court denied a *98 motion to compel arbitration, we will clarify what appear to be inconsistencies. An order refusing to compel arbitration is generally reviewed de novo. However, we recognize an exception to this general rule. In cases such as this one, where in ruling on the motion to compel arbitration a trial court hears ore tenus evidence and makes findings of fact based on that evidence, its order will not be set aside on appeal unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Jasper City Council v. Woods, 647 So.2d 723 (Ala. 1994). Absent live testimony, the trial court's findings of fact carry no presumption of correctness and we will review the trial court's factual and legal conclusions de novo. Justice v. Arab Lumber & Supply, Inc., 533 So.2d 538 (Ala.1988).
Williams Mitsubishi contends that the trial court erred in denying its motion to compel arbitration because, it argues, (1) the underlying transaction involved interstate commerce;[7] (2) by signing the arbitration agreement, Ivey agreed to arbitrate any dispute with Williams Mitsubishi arising out of the transaction; (3) the arbitration agreement was broad enough to encompass all of Ivey's claims; and (4) Ivey did not prove that she was fraudulently induced to sign the arbitration agreement.
Williams Mitsubishi also claims that Ivey could not have reasonably relied upon the alleged misrepresentation by Radney Williams, because, it says, she had the opportunity to read the arbitration agreement and verify its contents before signing it. Williams Mitsubishi cites several cases, including Green Tree Agency, Inc. v. White, 719 So.2d 1179 (Ala.1998), to support its argument that when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be on notice of all of the provisions contained in the contract and will be bound thereby. Therefore, Williams Mitsubishi argues, the arbitration agreement is valid and enforceable and clearly obligates Ivey to arbitrate her disputes with Williams Mitsubishi.
Ivey argues that the court correctly denied the motion to compel arbitration because, she says, Williams Mitsubishi obtained the agreement in a fraudulent manner that prevented her from agreeing to arbitrate of her claims.[8] Ivey alleges that the arbitration agreement was procured by fraud. Her fraud claim is subject to the "reasonable-reliance" standard.[9] Under that standard, Ivey could not prevail on her fraud claim if she in fact made a conscious decision not to read the arbitration agreement and nonetheless signed it without verifying the nature of its contents. However, we must assume the trial court made the findings of fact necessary to support its order, i.e., that it found fraud. See Thomas v. Davis, 410 So.2d 889, 891 (Ala.1982). Under the ore tenus standard of review, we must assume the trial court's factual finding of fraud was correct, and thus we must uphold the order based on that finding unless the court had before it no credible evidence to support that finding.
Ivey testified that she was not asked to sign the arbitration agreement until June 12, 1996, approximately six weeks after she had purchased the vehicle and after she had had numerous problems with it. She testified further that Radney Williams, whom she had personally known for approximately seven years and from whom she had previously bought other vehicles, represented to her that the document she was signing related to the vehicle she had traded in, and that he had covered *99 the document with a file folder so that she could not see what she was signing. This testimony was sufficient to create a fact question with respect to whether Ivey's reliance on Williams's representation concerning the nature of the document was reasonable. Accordingly, the order denying the motion to compel arbitration is affirmed.
AFFIRMED.
HOUSTON, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
BROWN, J., concurs in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent. Under the reasonable-reliance standard applicable to this case, Mary Ivey cannot demonstrate that she was fraudulently induced into signing the arbitration agreement. Ivey is a college graduate who made a conscious decision not to read the document offered to her. She signed an arbitration agreement without verifying its contents. Ivey does not allege that she was forced to sign the agreement, and she admits that the arbitration agreement does not contain any words that she could not understand. The fact that she says the arbitration agreement was covered by a file folder so that she could not see what she was signing makes it even more unreasonable to think that Ivey relied on Radney Williams's representations. This Court stated in Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 758-59 (Ala.1983):
"Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests."
This case presents a clear example of closing one's eyes to the truth.
Under the circumstances in this case, one must conclude that Ivey failed to exercise ordinary diligence in relying on any action by Williams that allegedly "led her to believe she was signing a paper related to the car she had traded in." Her reliance was not reasonable and cannot form the basis of a determination that she was fraudulently induced into signing the arbitration agreement. Because there was no supporting evidence for the trial court's finding of fraud, I would reverse the trial court's denial of the motion to compel arbitration.
SEE, J., concurs.
NOTES
[1] The parties dispute the actual date of the purchase. Ivey alleges that she test drove the vehicle on Saturday, May 4, 1996, and that she returned to the dealership on Monday, May 6, 1996, and purchased the car at that time. Radney Williams testified that Ivey purchased the car on May 4, 1996; this is the date on the paperwork related to the purchase. Ivey alleges that Williams backdated the papers, but Williams denies doing so.
[2] The arbitration agreement appears in a separate document and not as part of the sales contract. As discussed later in this opinion, the date Ivey signed the arbitration agreement is in dispute.
[3] Nothing in the record indicates that Radney Williams and Michael Williams are related.
[4] Ivey wrote a letter to Michael Williams on June 4, 1996, detailing her problems with the vehicle. She met with Michael Williams on June 12, 1996, and on that date he initialed the letter, acknowledging receipt.
[5] An appeal is "the proper procedure by which to challenge a denial of a motion to compel arbitration." A.G. Edwards & Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala.1990). A petition for a writ of mandamus is the generally accepted method by which to challenge the trial court's order granting a motion to compel arbitration. Ex parte Phelps, 672 So.2d 790 (Ala.1995).
[6] In Crimson Industries, this Court stated an exception to the application of the de novo standard:

"Our decision regarding the standard of review does not affect this Court's holding in Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897 (Ala.1995), in which it held that a trial court's determination as to whether a party had waived the right to compel arbitration should be reviewed under the abuse-of-discretion standard."
736 So.2d at 600, n. 3.
[7] Ivey does not argue that the transaction did not involve interstate commerce.
[8] No language in the arbitration agreement evidences an intent to submit the issue of arbitrability to arbitration.
[9] This case was filed on September 3, 1997, after this Court had readopted the reasonable-reliance standard. See Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997).