Suppose we sustain the order to arbitrate. What can the arbitrator do? *Page 254 
The arbitration paragraph expressly states, in pertinent part: "Therefore, the award shall not, and the arbitrator shall not have the power or authority to, hold Terminix responsible for (i) the repair or replacement of any termite damage to the identified property other thannew termite damage as defined in this Plan. . . ." (Emphasis added.) The "Termite Protection Plan" containing the arbitration paragraph provides that the definition of "new damage" "excludes damage existing at the inception date." Thus the arbitration paragraph prohibits the arbitrator from holding Terminix responsible for the plaintiffs' termite damage existing before the issuance of the "Termite Protection Plan." That is, the arbitration paragraph prohibits the arbitrator from granting relief on this claim.
While the initial language of the arbitration paragraph is broad, as the main opinion states, this initial broad language is limited by the subsequent particularized prohibition on the power and authority of the arbitrator. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36
(Ala. 1998) ("`[S]pecific terms and exact terms are given greater weight than general language.' Restatement (Second) of Contracts § 203(c) (1981)."); ERA Commander Realty, Inc. v. Harrigan, 514 So.2d 1329, 1335
(Ala. 1987) ("When there is a conflict in a contract, the specific substantive provisions control over general provisions."). The express language in the arbitration provision prohibiting the arbitrator from holding Terminix responsible for the preexisting termite damage manifests the parties' intention to exclude the plaintiffs' claim for the preexisting termite damage from the arbitration provisions and therefore effectively does exclude the plaintiffs' claim from the arbitration provisions.
Because the arbitration paragraph prohibits the arbitrator from holding Terminix responsible for the plaintiffs' preexisting termite damage, the effect of the trial court's order to arbitrate is not to determine the appropriate forum for the plaintiffs' claim, but, rather, to destroy the plaintiffs' claim altogether. Nothing in the "Termite Protection Plan" or the arbitration paragraph thereof can be interpreted legitimately as either an accord and satisfaction or a release of the plaintiffs' claim for preexisting termite damage. Any relinquishment or settlement of claims must be clearly and unambiguously expressed. See, e.g., Shadrickv. Johnston, 571 So.2d 1008 (Ala. 1990); Smith v. State Farm Mut. Ins.Co., 494 So.2d 7 (Ala. 1986).
I further dissent from the holding in the main opinion that the language of this arbitration paragraph is broad enough to applyretroactively to encompass the plaintiffs' claims preexisting the issuance of the "termite-protection plan." While the main opinion correctly cites Crimson Industries, Inc. v. Kirkland, 736 So.2d 597
(Ala. 1999), for the "holding that parties can agree to arbitrate disputes concerning prior transactions," 782 So.2d at 253, the particular arbitration language now at issue does not constitute an agreement to arbitrate the preexisting claim. The language now at issue contains no reference to preexisting claims. In this regard, this case is distinguishable from Crimson Industries and each one of the three cases it cites for support. The description in Crimson Industries was "any claims [which] may exist or hereafter arise." 736 So.2d at 601. The "hereafter arise" language implies that the parties intend to include all claims coming into existence at any time over a span of time, both past and future. The critical language in First Family Financial Services v.Rogers, 736 So.2d 553, 555 (Ala. 1999), is "your loan from us today; any previous loan." Likewise, the critical language in Merrill LynchPierce Fenner *Page 255 Smith, Inc. v. Kirton, 719 So.2d 201, 203 (Ala. 1998), is "any other agreement between [Merrill Lynch and Ms. Kirton], whether entered into prior [to], on, or subsequent to the date hereof." Finally, the critical language in Zink v. Merrill Lynch Pierce Fenner Smith, Inc.,13 F.3d 330, 331 (10th Cir. 1993), is "any controversy between us arising out of your business [which Merrill Lynch had been handling] or this agreement." Neither Crimson Industries, First Family, Kirton, nor Zink
supports the proposition that the plaintiffs before us agreed to arbitrate the preexisting claim.
Finally, I respectfully dissent from the main opinion insofar as it cites A.G. Edwards Sons v. Syvrud, 597 So.2d 197, 200-01 (Ala. 1992), for, in part, the proposition that a court "give[s] the broadest possible interpretation to an arbitration agreement." The language in A.G.Edwards does not include the extreme words "broadest possible," and this language will likely cause interpretations not intended by the parties.
For the reasons stated, I would grant the petition for a writ of mandamus and issue a writ directing the trial court to vacate the order to arbitrate.
Cook, J., concurs.